RIVERBANK IMPROVEMENT COMPANY *vs.* SARAH A. CHADWICK &
others, trustees, & others.

Suffolk.     March 22, 23, 1917. — October 8, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equitable Restrictions. Land Court. Constitutional Law,* Taking property
for private purpose with full compensation cannot be authorized. *Eminent
Domain. Real or Personal Property.*

Equitable restrictions are real estate as a part of the land to which they are appurtenant.

St. 1915, c. 112, purporting to confer on the Land Court jurisdiction "to hear and
determine the question whether or not equitable restrictions arising under contracts, deeds or other instruments, limiting or restraining the use or the manner
of using land are enforceable in whole or in part," and undertaking to authorize
that court, if it shall find that the restrictions are valid though not enforceable, to refer the case to the Superior Court for the ascertainment of damages,
and, "at any time after such assessment for the benefit of the persons or property entitled thereto," giving a petitioner under the statute the right to pay the
amount of damages with interest into the Superior Court, and providing that,
upon certification of the fact of such payment to the Land Court, that court
may register the title to the petitioner's land free from restrictions, is unconstitutional and void, because the taking of property for a private purpose without the consent of its owner upon payment of full compensation is a violation of
arts. 1, 10 of the Declaration of Rights and cannot be authorized by statute.

PETITION, filed in the Land Court on January 15, 1916, by the
Riverbank Improvement Company, a corporation organized
under the laws of this Commonwealth, under St. 1915, c. 112, as
the owner of certain land with the buildings thereon on Commonwealth Avenue in Boston, alleging that the petitioner's land was
encumbered of record by certain restrictions, the enforcement of
which would be inequitable and injurious to the public interest,
and praying that the petitioner's land might be registered free and
clear from such restrictions in accordance with the provisions of
the statute.

The case was heard by *Davis,* J., who made a decision determining among other things, that certain of the restrictions in
question, which prohibited the erection of "any building costing,
with the usual L or out-buildings, less than $15,000" and also pro-

hibited "the use of any building for an apartment house" or "for mercantile purposes," should not be enforced. The respondents appealed from the decision.

St. 1915, c. 112, is as follows:

"SECTION 1. The Land Court shall have jurisdiction upon a petition to register land, or if land has been previously registered, upon a supplemental petition by the owner or owners thereof, to hear and determine the question whether or not equitable restrictions arising under contracts, deeds or other instruments, limiting or restraining the use or the manner of using land are enforceable in whole or in part.

"SECTION 2. If the Land Court shall find and determine, after a hearing, that the enforcement of such restrictions or limitations, or any of them, would be inequitable or injurious to the public interests, it shall register title to the land free from said restrictions as and to the extent required by the equities of the case or by the public interests; or, in case of registered land, shall enter such order as may be appropriate therefor: provided, however, that if the Land Court shall find and determine that such restrictions or limitations, or any of them, though they ought not to be enforced are nevertheless valid and have not become inoperative, illegal or void because contrary to law or injurious to the public interest, it shall, before registering said land free from said restrictions or limitations or any of them as aforesaid, ascertain and determine whether any person or property entitled to the benefits of such restrictions or limitations, or any of them, may be damaged by the non-enforcement of the same. If so, the case shall be referred to the Superior Court for the assessment of such damages. The amount of any damages so assessed, with interest thereon from the date of such assessment to the date of payment, at the rate allowed by law upon judgments, may be paid into the Superior Court at any time after such assessment for the benefit of the persons or property entitled thereto; and if so paid the clerk of the Superior Court shall so certify to the Land Court. If no damages shall be awarded the clerk of the Superior Court shall certify that fact to the Land Court. Upon such certification from the clerk of the Superior Court of the final determination of such proceedings for assessment and of the payment of any damages therein assessed, the title may be registered free from any restrictions, or in case of

registered land may be freed therefrom by the entry of such order as may be appropriate therefor.

"SECTION 3. Any party aggrieved by a finding or decision of the Land Court that the enforcement of such restrictions or limitations, or any of them, would be inequitable or injurious to the public interests, may appeal therefrom to the Supreme Judicial Court, which shall have power to draw from the facts and instruments stated in the record, findings or decision any inferences of fact that might have been drawn therefrom at a trial, and to reverse or order such modification of said findings or decision as justice may require. The appeal shall be taken within twenty days after receipt of notice of the filing of such finding or decision, and further proceedings under section two shall be suspended until after the determination of said appeal. If an appeal is not duly prosecuted, the finding or decision shall stand as if no appeal had been taken.

"SECTION 4. This act shall take effect upon its passage."

*A. L. Taylor,* for the respondents the Chadwick trustees and the Ladensack trustees.

*P. N. Jones,* for the respondent Fannie E. Hurlburt.

*Lee M. Friedman,* (*J. P. Carr* with him,) for the respondent the Congregation Adath Israel.

*J. D. Graham,* for the respondents Eugene B. Hagar and Anna H. Stone.

*K. Howes,* for the respondent Frederick A. Washburn.

*B. Corneau,* (*R. F. Hooper* with him,) for the petitioner.

RUGG, C. J. This is a petition under St. 1915, c. 112, for the registration of lands of the petitioner situated in Boston. The general scope of that act, so far as it relates to facts presented on this record, may be stated briefly.

Jurisdiction is conferred by § 1 upon the Land Court to hear and determine in a petition for the registration of land the question "whether or not equitable restrictions arising under contracts, deeds or other instruments, limiting or restricting the use or the manner of using land are enforceable in whole or in part." It is provided by § 2 that if the Land Court shall find that "the enforcement of such restrictions or limitations, or any of them, would be inequitable . . . it shall register title to the land free from said restrictions as and to the extent required by the equi-

ties of the case . . . provided, however," that if that court shall
find that the restrictions are valid though not enforceable, it
shall ascertain whether any person or property entitled to the
benefits of such restrictions or limitations may be damaged by
their non-enforcement, and if it so finds, the case shall be sent
to the Superior Court for an assessment of such damages.  The
option is given to pay the amount of damages with interest "into
the Superior Court at any time after such assessment for the bene-
fit of the persons or property entitled thereto," and upon certifi-
cate to the Land Court of the fact of such payment the title
may be registered free from restrictions.

The Land Court has found that the land of the petitioner is
subject to equitable restrictions requiring that no buildings
costing less than $15,000 shall be erected upon the lots and pro-
hibiting "the use of any building for an appartment house" or
"for mercantile purposes," in favor of land owned by some of the
respondents; that such restrictions "are valid and have not be-
come inoperative, illegal or void;" that the removal of these
restrictions "would result in material damage, not only sentimen-
tally, but pecuniarily," and would render the dwelling houses of
some of the respondents "less desirable as residences, and would
depreciate their value" and "render their houses unfit for occu-
pancy for the purpose for which they were erected."  It also was
found that there had been no violation of the restrictions within
the restricted area.  The restrictions were established by the
owners, chief among whom was the petitioner, in the expectation
that the area to which they applied would be bought for the erec-
tion of expensive buildings each devoted to a private residence.
The construction of subways, the extension of means of rapid
transit, and the general use of the automobile has rendered homes
in the suburbs of Boston far more accessible than when the scheme
of restrictions for this area was put in operation.  By reason of
these and perhaps other causes, the restricted area is unavailable
for the uses for which these restrictions were designed, and by far
the larger part of it has not been built upon.  The Land Court
found that it would be "inequitable" to enforce the restrictions
as to cost of buildings, and prohibiting their use for apartment
houses and mercantile purposes, leaving other restrictions intact.

The question is whether the statute is constitutional in its ope-

ration upon the facts here presented by permitting the petitioner to have the damage which would be caused by the non-enforcement of these restrictions assessed, and to pay such damages and thus extinguish those restrictions.

An equitable restriction, such as has been found to exist in the case at bar, has been said to be "an easement, or servitude in the nature of an easement," *Peck* v. *Conway,* 119 Mass. 546, 549, "a right in the nature of an easement," *Beals* v. *Case,* 138 Mass. 138, 140, *Codman* v. *Bradley,* 201 Mass. 361, 368, and an "interest in a contractual stipulation which is made for their common benefit," *Evans* v. *Foss,* 194 Mass. 513, 515. It is an "equitable servitude" as to which commonly no action at law is open. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91. It was said in *Bailey* v. *Agawam National Bank,* 190 Mass. 20, "The so called equitable restriction results from the fact that equity will enforce the agreement against those taking with notice in favor of the then owner of the land to be benefited. Equity does not enforce the agreement because there is an equitable restriction." In *Sprague* v. *Kimball,* 213 Mass. 380, 382, occur these words: "It is not a covenant running with the land at law, but it is an equitable easement or servitude passing with a conveyance of the premises to subsequent grantees. *Parker* v. *Nightingale,* 6 Allen, 341. . . . While only the mode of use is regulated and the fee passed, yet the estate is encumbered with the inherent restrictions which create an equitable, enforceable interest." It follows from these and other decisions that such an equitable restriction is a property right in the person in favor of whose estate it runs or to which it is appurtenant. That has been expressly recognized or impliedly assumed in numerous decisions and is not now open to doubt. *Linzee* v. *Mixer,* 101 Mass. 512. *Wilson* v. *Massachusetts Institute of Technology,* 188 Mass. 565. *Stewart* v. *Finkelstone,* 206 Mass. 28. *Lodge* v. *Swampscott,* 216 Mass. 260. The extent of its enforceability and its value under varying circumstances are questions quite apart from its inherent nature as between private owners. See *United States* v. *Certain Lands,* 112 Fed. Rep. 622; *S. C.* on appeal *sub nomine; Wharton* v. *United States,* 83 C. C. A. 58.

It is a necessary corollary of these decisions defining the nature of equitable restrictions that they are real estate. They are part and parcel of the land to which they are attached and with which

they pass by conveyance.  *Hartt* v. *Rueter,* 223 Mass. 207, 212.
*Massachusetts Institute of Technology* v. *Boston Society of Natural
History,* 218 Mass. 189.

The effect of the instant statute as applied to these facts is to
extinguish this right as affecting the land described in the petition
so far as found to exist in the respondents, not for any public use
nor to subserve any public end, but merely for the benefit of other
private landowners whose estates are less valuable by reason of the
existence of the right and who could make more advantageous
and profitable uses of their own land if these incumbrances were
out of the way.  It has been found expressly that the enforce-
ment of the restrictions would "not be injurious to the public
interests."  That finding must be accepted as final and true.
Each of the respondents is to be forced against his will to sur-
render his right in the nature of an easement in the land of an-
other when it is not "inoperative, illegal or void" according to
the decision of the Land Court.  He will be obliged to make sur-
render of this real estate right and accept money damages in
place of it, not because demanded by the public interests, but
because a neighbor desires it for his private aims.  This is plain
from the bald statement of the facts.  It is supported by numer-
ous authorities where the matter is discussed at large.  *Lowell*
v. *Boston,* 111 Mass. 454.  *Opinion of the Justices,* 204 Mass. 607.
*Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass.
371.  *Opinion of the Justices,* 211 Mass. 624.  *Palairet's Appeal,*
67 Penn. St. 479.  It was said in *Hairston* v. *Danville & West-
ern Railway,* 208 U. S. 598, 606, "The courts of the States,
whenever the question has been presented to them for decision,
have, without exception, held that it is beyond the legislative
power to take, against his will, the property of one and give it to
another for what the court deems private uses, even though full
compensation for the taking be required."  *Madisonville Trac-
tion Co.* v. *Saint Bernard Traction Co.* 196 U. S. 239, 251.

The finding of the Land Court as to the enforcement of the re-
strictions here in question is framed in apparent accordance with
the principle of law laid down in *Jackson* v. *Stevenson,* 156 Mass.
496.  That principle in substance is that a court of chancery will
refuse at the suit of the owner of the restrictions to enforce equi-
table restrictions when "it would be oppressive and inequitable

to give effect to the restrictions," but will assess the damages caused by the interference of which complaint is made. A property right in the nature of real estate incident to the ownership of land, even though it cannot be enforced specifically in equity, is a property right different in kind from money damages assessed for the extinguishment of that property right. It was said in *Attorney General* v. *Williams,* 174 Mass. 476, 480, "if the statute is merely for the benefit of individual property owners, the purpose does not justify the taking of a right in land against the will of the owner." That principle is precisely applicable to the statute at bar. If the use for which the property is taken is not public, it is of no consequence that ample provision is made for compensation to the owner.

It may be that it would be wiser for the respondents to receive money damages and submit to the extinguishment of their other property right. But that fact, if it be a fact, is wholly irrelevant. By art. 10 of the Declaration of Rights, the right is guaranteed to "Each individual of the society . . . to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws." In the continued enjoyment of these three rights when defined and established by law the individual is not obliged to submit to the judgment of court or Legislature that he ought to hand them over for compensation to some one or more of his fel-, lows in their private interest. He is secure under the Constitution in his right to keep what is his own, even though another wants it for private uses and may be willing to pay more than its value.

The Legislature has broad powers as to the regulation of the rights of owners of property in common. It is on this ground that mill acts, cranberry acts, acts in regard to proprietors of wharves, general fields and lands lying in common and division of lands held by tenants in common, are upheld. *Lowell* v. *Boston,* 111 Mass. 454, 466, 468. *Turner* v. *Nye,* 154 Mass. 579, 582. *Wurts* v. *Hoagland,* 114 U. S. 606. It "often has been said with regard to the mill acts, that under them no easement or title of any kind is gained in or over the upper land, and that the water could be diked out, *Storm* v. *Manchaug Co.* 13 Allen, 10, 13; *Lowell* v. *Boston,* 111 Mass. 454, 466; although the language has not been uniform and it seems to have been held otherwise when the damages are paid

in gross.  *Isele* v. *Arlington Five Cents Savings Bank,* 135 Mass. 142."  Mr. Justice Holmes, in *Otis Co.* v. *Ludlow Manuf. Co.* 201 U. S. 140, 153.  That statement may be equally applicable to the other instances of property owned in common.  But manifestly that statement of the legal effect and constitutional bound of such statutes cannot be stretched to include a case like the present where a right in the nature of an easement in real estate is extinguished for the benefit of the servient estate upon the payment of money.  Suits to quiet title also are within the power of the Legislature.  *Crocker* v. *Cotting,* 173 Mass. 68.  *Loring* v. *Hildreth,* 170 Mass. 328.  The present statute is not of that character.  The rights of the parties are declared plainly by written instruments.

The case at bar is the converse of *Hellen* v. *Medford,* 188 Mass. 42, where it was held that a landowner once deprived of his land by eminent domain and hence entitled to compensation in money could not subsequently be compelled to accept a return of his land through abandonment in reduction of those damages.

As applied to the facts here disclosed, the statute deprives some of the respondents of their rights in real property for a private use contrary to the security afforded by arts. 1 and 10 of the Declaration of Rights.  The decision of the Land Court was erroneous in this respect.  It is needless to consider the other objections raised by the respondents, or the constitutionality of the statute in other aspects.  The decision of the Land Court is reversed on this ground.

*So ordered.*