RODMAN A. NICHOLS & others *vs.* ROBERT M. KIMBALL &
another.

Suffolk. May 23, 1930. — July 9, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To relieve from fraud, Accounting, Rescission.
*Agency,* Existence of relation. *Fraud. Equity Pleading and Prac-
tice,* Master: exceptions to report; Findings by judge; Appeal.

Where, upon appeal without a report of the evidence from a final decree
in a suit in equity, it appeared that an interlocutory decree had been
entered sustaining certain exceptions to a master's report and con-
firming the report as so modified; that no appeal had been taken
from the interlocutory decree; and that the final decree was not
erroneously affected by the interlocutory decree, the only question
open in this court was whether the final decree was within the scope
of the bill and supported by the facts found.
In a suit in equity against two defendants to rescind a purchase of land
by the plaintiff by reason of fraud on the part of the defendants and
for an accounting, it was found that the plaintiff agreed with one
of the defendants that they purchase the land together, each taking a
one-half interest; that that defendant in fact was acting as broker
for the seller, who agreed to pay him one half of the profit he received
by reason of the sale; that the second defendant then claimed a
commission; that the first defendant arranged with him that he
should have an interest in the one-half interest to be conveyed to the
first defendant; that the first defendant concealed from the plaintiff
his true relation to the transaction; that the plaintiff paid one half
of the purchase price; that the land was conveyed, one half to the
plaintiff and one half to the defendants; and that thereafter, one
holding a mortgage on the land having entered to foreclose, the de-
fendants obtained from the plaintiff a certain sum necessary to pro-

cure an extension of the mortgage by falsely representing to the plaintiff, through the first defendant, that the defendants were paying an equal amount towards the extension, which was obtained from the mortgagee. *Held,* that although the plaintiff could not recover from the second defendant the amount he had been induced to pay in the original purchase of the property, the second defendant participated in and received the benefit of the false representation made to the plaintiff by the first defendant in obtaining the money necessary to procure the extension of the mortgage; and that misrepresentation, having been material and relied upon by the plaintiff, justified the plaintiff in rescinding the transaction.

After the transaction above described, the defendants entered into a general agreement whereby the second defendant was to finance the the first defendant in real estate transactions conducted by the first defendant and was to receive one half of the profit resulting therefrom. The defendants expressly agreed that a partnership between them was not created thereby. The second defendant thereafter arranged to purchase another parcel of land and approved the first defendant's suggestion that a one-half interest therein be sold to the plaintiff. The plaintiff then assented to a proposition made by the first defendant that the plaintiff buy a one-half interest and the defendants the other half interest. The plaintiff relied on representations by the first defendant that he and the defendants were purchasing on equal terms. The defendants' interest in and true relation to the transaction were concealed from the plaintiff by the first defendant. The second defendant knew of such concealment. The plaintiff thereupon paid over to the second defendant the amount required of him and received a deed of a one-half interest. *Held,* that

(1) The first defendant stood in a fiduciary relationship to the plaintiff;

(2) The first defendant acted in this transaction as agent for the second defendant;

(3) Even if the second defendant did not know of the false representations made by the first defendant to the plaintiff, the plaintiff was entitled to rescind the transaction and recover from both defendants the amounts he had paid. ·

A master in the suit in equity above described found that the first defendant arranged to buy a third parcel of land and that the second defendant decided to finance such purchase under the general agreement between the defendants; that the first defendant agreed with the plaintiff that he should purchase a one-half interest and the plaintiff the other half interest; that the first defendant led the plaintiff to believe that he was buying the property with that defendant and not from him; that the plaintiff paid his share of the purchase price and received a deed of a one-half interest; that subsequently a mortgagee, who was a straw for the defendants, demanded payment of the mortgage; that the plaintiff paid his share of what was due; and that the money so paid was turned over by the mortgagee to the second defendant; that, in the transaction concerning

this parcel of land, the first defendant was not an agent of the second defendant; and that the second defendant did not have notice that the money paid by the plaintiff had been obtained by the first defendant improperly.  Exceptions by the plaintiff to the last two findings were sustained by an interlocutory decree.  *Held,* that

(1) The decree showed that the judge who ordered its entry found by inference that the first defendant was an agent of the second defendant;

(2) The inference drawn by the judge was proper;

(3) Whether the defendants were partners was immaterial;

(4) The second defendant was bound by the misrepresentations of the first defendant even if he had no knowledge thereof;

(5) The plaintiff was entitled to rescind the transaction and recover from both defendants the sums paid by him.

BILL IN EQUITY, commenced by a common law writ, filed in the Superior Court on December 6, 1926, and described in the opinion.

The suit was referred to a master, whose report was confirmed by an interlocutory decree entered by order of *Bishop,* J.  By orders of *Cox,* J., the plaintiffs thereafter were allowed to amend the bill, and the suit was recommitted to the master.  The master found: "Very shortly after the date when the plaintiffs agreed to purchase a half interest in the Big Jenkins Pond Parcel, the defendant Kimball and the defendant Fitts entered into a general agreement [in writing] for the year 1926, whereby Kimball was to finance Fitts in such real estate transactions on Cape Cod as Kimball might from time to time in each particular instance determine, and was to receive an equal share in any profits derived from transactions so financed.  Kimball was not to take any active part in the buying or selling operations which were to be conducted by Fitts, who, however, was not to commit Kimball to any purchase which was not approved by Kimball.  Advances made by Kimball were to be entitled to prior security.  The agreement as finally reduced to writing expressly declared that a partnership was not created.  It also expressly excluded the Big Jenkins Pond Parcel. . . . Kimball under this agreement financed about fifty or sixty purchases made by Fitts.  The practice was to take title in the name of a straw designated by Kimball and, instead of treating each transaction sepa-

rately, to regard all property at any time so held as general security for all outstanding advances."

Other material findings are stated in the opinion. Upon the filing of his supplemental report, there were entered, by order of *Burns*, J., an interlocutory decree denying a motion by the defendants' to recommit the report, sustaining certain exceptions to the report by the plaintiffs and, as so modified, confirming the report; and the final decree described in the opinion. The defendant Kimball appealed from the final decree only.

*F. A. Thayer & G. L. Ellsworth*, for the defendant Kimball.
*H. W. Ogden & E. J. Owens*, for the plaintiffs.

CARROLL, J. The bill, in this suit in equity, alleges that the defendant Kimball induced the plaintiffs to enter into business relations with him and the defendant Fitts for the purchase and sale of real estate on Cape Cod; that there were certain transactions between the parties, whereby the plaintiffs were defrauded. The bill asked for a decree declaring that the transactions were fraudulent and that an account be taken.

The case was referred to a master. He found that the plaintiffs agreed with Fitts "to venture up to a total of $30,000 in Cape Cod real estate," looking "to Fitts as their mentor and guide"; and although the relationship of the parties was not definitely stated, the master found that the plaintiffs were looking to Fitts "as something more than a mere broker." With one of the plaintiffs he inspected several parcels of land on Cape Cod.

The suit concerns different parcels of land. One of the parcels is called the Big Jenkins Pond tract. Fitts informed the plaintiffs Sanders and Nichols that this tract could be bought for $50,000. The plaintiffs agreed to take a half interest in the parcel if Fitts would take the other half; he agreed to this. Prior to this agreement Fitts, acting as a broker, had negotiated an agreement of sale of this same tract for $42,500 between one Dalzell, who was a friend of his, and one Rosenbaum. Fitts was to receive from Rosenbaum a broker's commission of five per cent on the purchase price of $42,500. Fitts suggested to Dalzell a resale for

$50,000. When he learned that the plaintiffs would purchase a half interest, he made an agreement with Dalzell to purchase for $50,000 conditional on the purchase by the plaintiffs of the half interest. One half of the profit of $7,500 was to go to Dalzell and one half to Fitts "as a commission." When Fitts told Kimball of the proposed sale to the plaintiffs, Kimball claimed a commission, and an agreement was made whereby Fitts assigned to Kimball his prospective commission of $3,750.

All of these facts were concealed from the plaintiffs. Fitts represented to them that he and they would buy the property for $50,000 on equal terms; that he was making an agreement with Dalzell to purchase for $50,000, of which $2,500 was payable as a deposit, $21,000 in cash on delivery of the deed, and the balance by mortgage for $26,500. The master found that Fitts led the plaintiffs to believe and that they did believe they were buying with him and not from him.

The plaintiffs paid Fitts one half of the $2,500 and one half of $21,000. The total amount paid by the plaintiffs was less than the cash payment to be made Rosenbaum. Kimball agreed to supply Fitts with $2,250, which he obtained from one Kingsbury. As a part of this transaction Kimball was to surrender his claim to the commission and in return was to become half owner with Fitts, and Kimball agreed that Kingsbury should have a half interest in Kimball's share. The purchase was made from Rosenbaum; title was taken in the name of a straw, who gave a mortgage to Rosenbaum for $26,500, conveyed a one-half interest to Nichols, acting for the plaintiffs, and held the remaining half interest for Fitts, Kimball and Kingsbury. The plaintiffs paid one half the attorney's fees.

In September, 1926, the mortgagee entered to foreclose, principal being in default. Fitts represented to the plaintiffs that the mortgage could be extended if $5,092 was paid; accordingly, the plaintiffs paid Fitts $2,546. This amount was turned over to the mortgagee and the extension executed. Neither Kimball nor Fitts paid anything. It was found that the defendants obtained from the plaintiffs the entire cash

required for the extension, while representing to the plaintiffs, through Fitts, that the defendants were paying an equal amount, and the plaintiffs relied on this representation. In August, 1927, the mortgage was foreclosed. The plaintiffs acquired title at the foreclosure sale subject to a new mortgage for $25,000.

Another tract involved is called the Little Jenkins Pond parcel. Kimball arranged to purchase this tract for $6,600 and agreed with Fitts that if he found a purchaser at $15,000 Kimball would take care of him. Fitts suggested that one half the parcel be sold to the plaintiffs. Kimball approved. Fitts represented to the plaintiffs that the land could be bought for $15,000 and said if they would buy a half interest, he and Kimball would buy a half interest on equal terms with them; the plaintiffs assented to this arrangement. Title was taken in the name of a straw. The master found that in this transaction the plaintiffs were led to believe and did believe that they were buying with the defendants and not from Fitts. The plaintiffs paid one half of the cash deposit; the net amount of $3,750 paid by them was turned over to Kimball. Fitts furnished no cash on the Little Jenkins Pond purchase, but did indorse the second mortgage note for $3,900. The cash expended by the plaintiffs was more than the cash which Kimball had to pay out. It was also found with reference to this transaction that Kimball "regarded himself as presently selling a half interest to the plaintiffs through the agency of Fitts"; that Fitts did not disclose the actual facts to the plaintiff, nor inform them that Kimball had any interest in the trade; that the plaintiffs relied on Fitts's representations that the defendants were buying on equal terms with them, and that Kimball knew his connection with the transaction was not disclosed. The plaintiffs paid one half of the legal expenses and their share of the interest; this was turned over to Kimball. The first mortgage on this parcel was foreclosed. The plaintiffs have become the owners subject to a new mortgage.

The third tract was known as the Eastham parcel. Fitts proposed to the plaintiffs that he and they should buy a piece of land in Centerville on substantially the

same terms as the other transactions; they paid Fitts
$2,000. This particular tract was not purchased. In
February, 1926, Fitts agreed to buy the Eastham tract
for $12,500 — $500 down, $4,500 in cash when the deed
was delivered and a mortgage back for $7,500. Fitts
reported to Kimball who decided to finance the purchase
"under the provisions of the general financial agreement
between Kimball and Fitts." Fitts represented to the
plaintiffs that this property could be bought for $32,400;
they were willing to buy a one-half interest on equal terms
with him at this price. As to this tract the plaintiffs were
led to believe and did believe they were buying with Fitts
and not, as he contended, from him. Kimball had an
interest in the profits Fitts might receive. The property
was bought, the plaintiffs giving to Fitts $7,750, title
taken in the name of a straw, and a deed of one-half in-
terest given the plaintiffs. Fitts made no contribution to
this purchase. Before conveyance was made to the plain-
tiffs of a one-half interest, the straw, who held title, gave
a second mortgage to one Sherburne, a straw for Kimball
and Fitts. When the second mortgage became due Sher-
burne demanded payment; the plaintiffs did not know
that he was acting for Fitts and Kimball. After a con-
versation with Fitts in which he said if the plaintiffs would
pay their half he would pay his half, they turned over to
him $2,506.75 of which $2,454 was in the form of a check;
this was cashed by Sherburne and the money given to
Kimball.

The master found that in the matter of the Eastham
tract, as an inference from other facts found, there was no
relation of principal and agent between Kimball and Fitts;
and also, as an inference from other facts, that Kimball
had no actual notice that any money turned over to him
by Fitts had been improperly obtained from the plain-
tiffs. The plaintiffs objected to these findings. The
judge sustained the plaintiffs' objections to the report
and denied the defendants' motion to recommit the re-
port. An interlocutory decree was entered, sustaining
the plaintiffs' objections and confirming the report as

modified by sustaining the plaintiffs' objections. No appeal was taken from the interlocutory decree. A final decree was entered for the plaintiffs; the defendant Kimball appealed from this decree.

Considering first the Big Jenkins Pond transaction: The master has not reported the evidence; his findings in so far as they concerned this transaction have been confirmed by the interlocutory decree from which no appeal has been taken. It does not appear that the final decree was erroneously affected by the interlocutory decree. The only question open on this part of the case was whether the final decree was within the scope of the bill and supported by the facts found. *Craig* v. *Warner*, 216 Mass. 386. *Ledoux* v. *Lariviere*, 261 Mass. 242.

The master found that Kimball had no connection with Fitts in representing to the plaintiffs that he was buying this Big Jenkins Pond tract with them on equal terms. The plaintiffs, therefore, make no contention that they can recover against Kimball for the $11,750 they were induced to pay Fitts by reason of his misrepresentations. Their contention is that, as Kimball participated in the fraud by which the defendants obtained from the plaintiffs $2,546 for the extension of the mortgage, nothing having been paid by the defendants for this extension, and this money being turned over to Kimball, he received the benefit of the fraud practised by Fitts. The contention of the plaintiffs on this point is supported by the master's findings. *Isenbeck* v. *Burroughs*, 217 Mass. 537, 540. The misrepresentation was material: it was made to deceive; the plaintiffs relied on it; this was sufficient to justify a rescission. *Rykiel* v. *Sklaver*, 259 Mass. 608. There is nothing in *O'Shea* v. *Vaughn*, 201 Mass. 412, in conflict.

In the Little Jenkins Pond transaction, the plaintiffs supposed from the representations made to them that they were engaged in a common adventure with Fitts; they believed that they were jointly interested with him in the enterprise. They looked upon him, the master says, as their "mentor and guide." Fitts was not a broker, as he contends; he was jointly interested. Kimball brought

the parties together. Fitts was acting as Kimball's agent, and the plaintiffs were ignorant of this. Fitts, while standing in a fiduciary relation to the plaintiffs, falsely represented to them that they were buying on equal terms with the defendants, and the plaintiffs relying on this misrepresentation made the payment of $3,750. Even if Kimball did not know of these false statements, they were made by his agent to procure the payment of the money and the plaintiffs can rescind. *Thompson* v. *Barry*, 184 Mass. 429.

In the consideration of the Eastham matter the master found, as an inference of fact from the other facts found, that there was no relation of principal and agent between Kimball and Fitts in this transaction. This finding was objected to by the plaintiffs and the trial judge sustained the objection. The interlocutory decree sustaining the plaintiffs' objections was not appealed from. The decree shows that the judge found this relation did in fact exist; he could draw this inference from the facts found. In this the judge was right. In our judgment it should be inferred from all the facts, including the written agreement between Kimball and Fitts, that Fitts was the agent of Kimball. *Rosenberg* v. *Schraer*, 200 Mass. 218. *Star Brewing Co.* v. *Flynn*, 237 Mass. 213, 216.

It is not necessary to decide whether in a strict sense Fitts and Kimball were partners. They were engaged in a joint undertaking with the plaintiffs: they were required to act in good faith; Fitts acted for Kimball; for the misrepresentations made and the fraud committed the defendants are liable. See *Locke* v. *Stearns*, 1 Met. 560; *White* v. *Sawyer*, 16 Gray, 586. It could also be inferred from all the facts shown that Kimball had knowledge of what Fitts was doing; that the money paid him was unjustly obtained from the plaintiffs. Fitts was the agent and, even if the principal had no knowledge of the fraudulent representations, if they were made within the scope of the authority the principal was bound by them. *Jewett* v. *Carter*, 132 Mass. 335. The plaintiffs therefore could rescind the fraudulent transactions. *Thompson* v. *Barry*, *supra*.

By the final decree it was adjudged that the defendants were jointly and severally liable in the sum of $21,209.92, with interest. This sum of $21,209.92 was made up of the money paid on the Big Jenkins Pond parcel and the Little Jenkins Pond tract, and the various deposits and payments on the Eastham property together with the amount carried over from the Centerville land.

All the arguments presented by the defendant Kimball have been considered. We find no error.

The plaintiffs in their bill offered to return all that they had received, and the decree provided that, on receipt of the money payment ordered, the plaintiffs were to convey all their right and title to the tracts of land mentioned in the master's report.

*Decree affirmed with costs.*