BERNARD JENNEY & another, trustees, *vs.* DORIS HYNES & another.

Suffolk. November 15, 1932. — February 21, 1933.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Equitable Restriction. Equity Pleading and Practice,* Master: inferences.
   *Equity Jurisdiction,* To enforce equitable restriction. *Zoning.*

An owner of one of the lots in a tract of land was not barred from main-
   taining a suit in equity to enforce equitable restrictions, applicable to
   the other lots for the benefit of the plaintiff's lot, by the mere fact
   that he had not objected to the erection and temporary maintenance
   of certain structures on lots other than those of the plaintiff and the
   defendant, even if it were assumed that their erection and mainte-
   nance were in violation of the restrictions.
A structure of sheet metal, which was sixteen feet long, four feet deep
   and five feet nine inches high and was built upon a cement platform
   raised six or eight inches above the ground, which contained pumps,
   tanks and other apparatus used in gasoline filling stations and which
   was used as such, properly could be found to be a building within
   the meaning of equitable restrictions prohibiting, until 1950, on the
   land on which it was erected, the erection, placing or use of any build-
   ings other than dwelling houses or outbuildings to dwelling houses,
   the erection of stables of any kind, and the use of any building as an
   apartment house, family hotel or flats, or for manufacturing, mer-
   cantile or mechanical purposes.
The restrictions above described were applicable to all the lots in a tract
   of land in Boston except a lot H. A purchaser of that lot, relying on
   the restrictions, erected and operated thereon a gasoline filling sta-
   tion. Subsequently the structure and appliances above described
   were placed on two of the other lots by a lessee thereof. In a suit in
   equity by the owner of lot H against the owner and the lessee of the
   other two lots to enforce the restrictions, a master found that the
   land near the tract in question had come to be used almost exclusively
   for business purposes, mostly for the automobile and automobile ac-
   cessories business; that the only buildings then used for dwellings were
   hotels and apartment houses; that most buildings erected as single
   family dwellings had come to be used for physicians' offices or fra-
   ternity houses; that the extension of a subway, then in process, would
   bring cars to the street level about midway of the tract in question,
   with a stopping place at that point; and that this was a detriment to
   the use of the tract for single family dwellings. The master concluded
   that "there is no reasonable possibility of the erection or use as a single

family dwelling of any building on the defendants' property or on any lot fronting on" a street bounding the tract; that "this results from the changed character and conditions of the neighborhood surrounding" the tract; and that the purpose of the restrictions, to make the tract a suitable locality for single family dwellings, could be accomplished no longer. By order of a judge of the Superior Court, the master's report was confirmed and a final decree in the plaintiff's favor was entered. Upon appeal by the defendants from the final decree, it was *held*, that

(1) The conclusions of the master, based on inferences from the restrictions and from the subsidiary facts found, were not binding upon the judge or upon this court;

(2) Assuming that the result of the enforcement of the restrictions would be to lessen the value of the land in the tract, that result did not constitute a sufficient reason for refusing to enforce them;

(3) There was no merit in a contention by the defendants that it would be unjust and inequitable to enforce the restrictions and that therefore the plaintiff should be limited to the recovery of money damages;

(4) If the restrictions were not enforced, injustice would be done the plaintiff by subjecting him to a competition, freedom from which he had relied upon in purchasing his lot;

(5) An inference was proper that the effect of the extension of the subway would be a convenience and benefit to residents of the tract rather than a detriment, as the master concluded;

(6) The zoning law of Boston, St. 1924, c. 488, was immaterial, and did not affect the rights of the plaintiff, although under it one half of the tract was in a local business district and the other half was in a general residence district;

(7) The master's subsidiary findings warranted a conclusion contrary to his conclusion that "there is no reasonable possibility of the erection or use as a single family dwelling of any building on" the street bounding the tract and that "this results from the changed character and conditions of the neighborhood surrounding" the tract: on all the findings, this court were of opinion that the character of the neighborhood where the plaintiff's lot was located had not so changed as to render no longer possible the accomplishment of the purposes of the restrictions;

(8) The final decree was proper.

BILL IN EQUITY, filed in the Superior Court on June 5, 1931, to enforce certain equitable restrictions, as described in the opinion.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *F. T. Hammond*, J., there was entered an interlocutory decree confirming the master's report. By order of *Dillon*, J., there was entered a final decree ordering as follows:

"First: That plaintiffs as owners of the parcel of land . . . shown as lot H in Block C . . . are entitled to enforce the restrictions . . . against the defendants as owners of lots 22 and 23 . . . until January 1, 1950.

"Second: That the erection, maintenance and use by defendants of the building now on defendant's said land and described in the master's report are violations of said restrictions.

"Third: That defendants be and they are hereby ordered within one month from the date of this decree to remove from their said land the building now thereon and described in the master's report.

"Fourth: That defendants and their several attorneys, agents, servants and employees be and they are hereby enjoined until January 1, 1950, from erecting, placing or using upon their said land or any portion thereof any building other than dwelling houses (which word shall include club-houses) with the usual out-buildings appurtenant thereto or in design or construction fitted for occupancy by more than one family, and from using or permitting the use of any building erected on said land for any manufacturing, mercantile or mechanical purposes or as an apartment house, family, hotel or flat."

The defendants appealed from the final decree.

The material portions of the plan mentioned in the opinion are shown by the following sketch:

*H. Bergson,* (*John J. Walsh* with him,) for the defendant Hynes.

*E. B. Conway,* for the defendant The Texas Company, submitted a brief.

*F. L. Norton,* (*M. Jenney* with him,) for the plaintiff.

CROSBY, J.   This bill in equity is brought by the owners of land on the corner of Commonwealth Avenue and Deerfield Street, in Boston, against the owner and the lessee of land on the corner of Commonwealth Avenue and Sherborn Street, to enforce certain equitable restrictions.   A final decree has been entered in favor of the plaintiffs from which the defendants appealed.   The case was referred to a master.   The defendants' objections to his report were overruled and an interlocutory decree was entered confirming it and denying a motion for recommittal.   With the exception of part of the testimony of two witnesses, the evidence is not reported. , The question for decision is whether the final decree is warranted upon the facts found and those agreed to by the parties.

A plan dated January 9, 1894, was introduced in evidence marked Exhibit 3.   The estates of the plaintiffs and defendants are both on the Commonwealth Avenue side of block C, the plaintiffs' estate being marked on the plan "Lot H" "Reserved For Sale," and the defendants' estate being lots 22 and 23.   All the lots in block C except the plaintiffs' are subject to certain restrictions established in 1896 to remain in force until January 1, 1950, for the benefit of all the land in that block including the defendants' land.   It appeared that there were "two sets of restrictions, one expiring in 1930 and one expiring in 1950," and that "they were the same restrictions only covering a wider area."   These restrictions prohibit the erection, placing or use on said land of any buildings other than dwelling houses or outbuildings to dwelling houses, the erection of stables of any kind and the use of any building as an apartment house, family hotel, or flats, and prohibit in design or construction any building to be fitted for occupancy by more than one family, or to be used for manufacturing, mercantile or mechanical purposes.

The plaintiffs, on August 3, 1923, in reliance upon the restrictions which prohibited the use of buildings for commercial purposes, purchased lot H; they improved it and erected thereon a substantial one-story building and installed gasoline tanks and pumps and other apparatus commonly used in gasoline filling stations. The defendant Doris Hynes, the owner of lots 22 and 23, leased them to the defendant The Texas Company, which a short time before the filing of the bill placed upon the lots a building and certain structures customarily found and used at gasoline filling stations. The building was of sheet metal sixteen feet long, four feet deep, and five feet nine inches high, upon a cement platform raised six or eight inches above the ground, having three compartments containing an electrically operated air compressor for furnishing power for pneumatic hoists, and five tanks with hand pumps for delivering oil, meter boards and switches for the electrical equipment. The Texas Company is using said premises as a gasoline filling station for the sale of gasoline and oil, and for rendering the customary service of gasoline stations. The master found that the structure on these lots is a building within the meaning of that word as used in the restrictions, and that the building is being used for mercantile and mechanical purposes in violation of the restrictions.

On ten lots facing the Bay State Road side of block C are ten dwelling houses, erected before 1923; they are the only buildings erected, placed or used in block C except the following: About 1928 a structure, having the appearance of a room in a dwelling house, was erected on lots 20 and 21 for the purpose of exhibiting furniture arranged as though the room were furnished. After about two years this was abandoned. In June, 1929, a tent was placed on lots 1 and 2 for the display and sale of used cars; this continued for almost two months. Gasoline and oil were delivered from a filling station across the street and sold on the premises. In 1930 a wooden building ten feet wide, twelve feet deep, and ten and one half feet high was built on lots 1 and 2 and was laid out as a miniature golf course; after about four months this enterprise was abandoned.

The master found that with these three exceptions there have been no violations of the restrictions in block C, other than that by the defendants in the present case. It is found, however, that several bill boards have been erected in block C on the Commonwealth Avenue side.

The same restrictions as appear in block C were established at the same time for all the blocks marked A to G on the plan which comprised all the land between Commonwealth Avenue and Bay State Road extending westerly from Deerfield Street to Cousen's Coal Wharf, shown on the plan. By express language each set of restrictions was limited to the land in the block in which the restricted lots respectively were located. All the land in blocks E, F and G extending from Granby Street to Cousen's Coal Wharf is owned by Boston University which has prepared plans for the development of the tract for university purposes. Blocks A and B on the north side of Bay State Road west of Deerfield Street are used exclusively for single family dwellings, the Charles River being in the rear of them. The master found that there have been no violations of the restrictions in the whole restricted area shown on the plan except those hereinbefore referred to in block C, and the erection of a four-story brick building on one of the lots in block D.

The master found that land outside the restricted area and south of Commonwealth Avenue within a radius of a quarter of a mile of the plaintiffs' land is used almost exclusively for business purposes, and mostly for the automobile and automobile accessories business; that the only buildings used for dwellings are hotels and apartment houses; that buildings erected as single family dwellings are now used for physicians' offices, or fraternity houses, with a few exceptions.

It was agreed by the parties that certain facts are agreed to in addition to the facts stated by the master and are made a part of the record; that so far as such agreed statements are inconsistent with any facts found by the master the agreed facts are to be taken as true. These additional facts are recited in the record and need not be herein stated.

There was no appeal from the interlocutory decree overruling the defendants' exceptions to the master's report and confirming the same. The question presented for decision is whether the final decree is justified by the facts found. *Nichols* v. *Kimball*, 272 Mass. 325, 333. *Lamb Knitting Machine Co.* v. *Chicopee Manuf. Co.* 273 Mass. 506, 517, and cases cited.

In accordance with the well established rule the facts found by the master must be accepted as true unless mutually inconsistent or contradictory and plainly wrong. *Prudential Trust Co.* v. *McCarter*, 271 Mass. 132, 139. *Nelson* v. *Belmont*, 274 Mass. 35, 39. The restrictions by their express terms apply to the defendants' lots for the benefit of the plaintiffs' lot. There is nothing to show that the restrictions upon the defendants' lots have been released by the plaintiffs or by their predecessors in title. The agreement of the parties above referred to relates to a deed and a release of the restrictions on lots in block C other than lots 22 and 23 and lot H, and cannot affect or impair the rights of the plaintiffs to enforce such restrictions against the defendants. Moreover, the purchaser named in the release reserved his rights to enforce the restrictions as to any other land owned by him and entitled to the benefit of the restrictions. The contention of the defendants that the right to enforce the restrictions has been abandoned cannot be sustained. There is nothing to show any acts by the owners of lot H or by their predecessors in title which unequivocally manifest an intention to relinquish the restrictions, or a purpose inconsistent with their further existence, and the master so found. *Hartt* v. *Rueter*, 223 Mass. 207. In the absence of a report of the evidence this finding must stand.

The restrictions have been in existence since they were established in 1896, until 1931 when the plaintiffs' bill was filed. The erection and temporary maintenance and use of bill boards and other structures upon lots in block C by other owners, if it be assumed they were so erected and maintained in violation of the restrictions, cannot affect the rights of the plaintiffs even if they did not object to them. It was said in

*Bacon* v. *Sandberg,* 179 Mass. 396, at page 399: "It appears to be settled in this Commonwealth that a plaintiff is not prevented from obtaining relief by the fact that he has not objected to a violation of a restriction by some one in the neighborhood other than the defendant." We are of opinion that bill boards and the other structures which have heretofore been erected upon lots other than those of the plaintiffs and the defendants are not buildings, and for that reason their erections are not violations of the restrictions. It was held in *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 88, that a bill board was not a building. The other structures shown to have been erected on lots not owned by the parties in any event cannot be considered more than slight and temporary violations of the restrictions. The owners of lot H are entitled to the benefit of the restrictions imposed upon all the lots in block C. Lot H is the only one in block C upon which a building can lawfully be erected and used for business purposes. The contention of the defendants that the structure erected on lots 22 and 23 is not a building within the meaning of the restrictions, but is merely a structure for the protection of the apparatus used in connection with the business there conducted and as a shelter from the elements cannot be sustained. *Small* v. *Parkway Auto Supplies, Inc.* 258 Mass. 30, is cited by the defendants in support of their contention. We are of opinion that case and the cases therein referred to upon the facts here found are plainly distinguishable from the present case. The master stated that he "did not see anything to indicate that this building was used for any other purpose than to house and protect the contents . . . but there is a certain amount of vacant space which might be utilized." His ultimate finding, that the structure is a building and its erection was a violation of the restrictions, was warranted by his other findings. He further found that in reliance upon the existence and enforceability of the restrictions, and the freedom from competition which the plaintiffs would enjoy in consequence of the fact that a gasoline station could not be successfully conducted without the erection and use of a building in violation of the restric-

tions, they made the purchase and improvement of lot H and have since used the premises as a gasoline filling station.

Apart from other defences, it is the contention of the defendants that since 1896, when these restrictions were created, the character of the neighborhood has so changed from a residential to a business locality that it would be inequitable to enforce the restrictions for a longer period, and they rely upon certain findings of the master which tend to support that conclusion. It is found that the plaintiffs' title to lot H, and the title of the defendants to lot 22 are derived through mesne conveyances from deed of the Riverbank Improvement Company to Howard Stockton et al., trustees of Riverbank Improvement Trust dated August 28, 1922, and duly recorded. The defendants' title to lot 23 is derived through mesne conveyances from a deed of the Riverbank Improvement Company to Charles U. Cotting dated March 13, 1900, and duly recorded. No other instruments of record affect any easement or restrictions created by any deed above mentioned. There was evidence that when the plaintiffs purchased lot H in 1923 they had been advised as to both sets of restrictions on block C, one expiring in 1930 and the other in 1950, and were further advised that no garage could be erected within the restricted area; that they relied thereon and on the restriction that no land could be used for a gasoline station or other commercial purpose in block C. These restrictions have been held valid and enforced by this court in several cases relating to different lots in the seven blocks shown on the plan. See Carr v. Riley, 198 Mass. 70; Riverbank Improvement Co. v. Bancroft, 209 Mass. 217; Prest v. Ross, 245 Mass. 342; Tripp v. Fay, 264 Mass. 516; Doyle v. Wheeler, 265 Mass. 256. All these cases dealt with different questions which arose respecting these same restrictions. See also Riverbank Improvement Co. v. Chapman, 224 Mass. 424. In Riverbank Improvement Co. v. Chadwick, 228 Mass. 242, it was said at page 247 that the Legislature could not extinguish rights acquired by an equitable restriction "merely for the benefit of other private landowners whose estates are less valuable by reason of the existence of the right and who could

make more advantageous and profitable uses of their own land if these incumbrances were out of the way." An owner whose land is subject to equitable restrictions cannot violate them and when suit is brought against him relieve his property from the restrictions by the payment of damages.

The change in the character of the neighborhood as set forth in the subsidiary findings of the master has not been such as to render the restrictions no longer enforceable in equity. His ultimate findings are as follows: "On all the evidence I find . . . that there is no reasonable possibility of the erection or use as a single family dwelling of any building on the defendants' property or on any lot fronting on Commonwealth Avenue in block C and that this results from the changed character and conditions of the neighborhood surrounding block C"; "that the changed character of the locality surrounding the defendants' premises has resulted from other causes than any violations of the restrictions above set forth"; "that the purpose as a whole of the said restrictions was to make block C a suitable locality for single family residences and that owing to the general growth of the city and the use of the neighborhood for business this purpose can no longer be accomplished"; "that even if all the said restrictions were rigidly enforced the effect would be not to restore to the locality its intended residential character, but to lessen the value of the vacant land on block C fronting on Commonwealth Avenue for the purpose to which it is now adapted." These findings are based upon inferences from the restrictions and from the other facts found. The trial judge was not bound by the master's findings but could rightly draw different inferences from the subsidiary facts found by the master. *Robert* v. *Perron*, 269 Mass. 537, 540. *Crowell & Thurlow Steamship Co.* v. *Crowell*, 280 Mass. 343, 358–359. *International Paper Co.* v. *Priscilla Co.* 281 Mass. 22, 31.

It is a reasonable inference that the restrictions were intended to make block C a desirable locality for single family residences, with the exception of lot H. The master found that the enforcement of the restrictions would lessen the value of the vacant lots in block C fronting on Common-

wealth Avenue for the purpose to which they are now adapted. The defendants' property is subject to the restrictions, and its value since they were imposed is affected like other lots in block C by them. It may be inferred from the facts found that to enforce the restrictions would continue the present value of that portion of the land in block C on Commonwealth Avenue not owned by the plaintiffs, and that to release the restrictions would increase its value. If to enforce the restrictions on said land will lessen its value such a result does not constitute a sufficient reason for refusing to enforce them. It was said in *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, at page 387, "The great increment in the value of the land of the defendant which will arise from refusal to enforce this restriction is of slight if any consequence. The restriction was matter of record in the chain of the defendant's title and the defendant was bound by notice thereof." The findings of the master respecting the enforcement of these restrictions apparently were framed in accordance with the law stated in *Jackson* v. *Stevenson*, 156 Mass. 496, upon which the defendants strongly rely. They argue that it would be unjust and inequitable to enforce the restrictions, and therefore the plaintiffs are to be limited to the recovery of money damages. In discussing this question it was said in *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242, at page 248: "If the use for which the property is taken is not public, it is of no consequence that ample provision is made for compensation to the owner." *Jackson* v. *Stevenson* held that it would be oppressive and inequitable to give effect to the restrictions, and that to enforce them could have no other effect than to harass and injure the defendant, without effecting the purpose for which the restrictions were originally imposed. The facts there are vitally different from those found in the present case. In that case it appeared that there had been a change in the character of the neighborhood; that the houses were no longer used as dwellings exclusively but were devoted to a considerable extent to business purposes; and that the proposed structure would cause no perceptible damage to the plaintiffs'

estate "beyond the possible technical damage which the law may assume." (Page 501.) In the case at bar, although the master found that the character of the neighborhood had changed, there was no change in block C where the lots of the plaintiffs and the defendants are located. It is still residential in character. All buildings in that block except those of the plaintiffs and the defendants and the three temporary structures previously mentioned are single family dwellings erected with knowledge of the restrictions and in reliance upon full compliance therewith.

As lot H is not subject to the restrictions, if the defendants may violate them the plaintiffs will be obliged to carry on their business in competition with the defendants, although in reliance upon the freedom from competition the plaintiffs bought the lot and erected a building at a substantial expense. They established their business about eight years before the bringing of this bill. In these circumstances to allow the defendant. The Texas Company to carry on a competing business in the same block with that of the plaintiffs manifestly would be unjust and inequitable.

The master found as follows: "At the present time the subway is in process of extension which will bring the cars to the street level about midway of block C with a stopping place at that point. I find that this condition is a detriment to the use of block C for single family dwellings." This finding is not conclusive. It might reasonably be inferred that it would be a convenience and benefit to residents of dwellings in block C to have easy access to the cars in going to and from their homes.

The circumstance that the southerly half of block C fronting on Commonwealth Avenue lies within an area that is zoned under St. 1924, c. 488, "as a local business district, and the northerly half fronting on Bay State Road is zoned as a general residence district," does not affect the rights of the plaintiffs. It is settled that a zoning law has no effect upon established and existing building restrictions. *Vorenberg* v. *Bunnell,* 257 Mass. 399, 408. *Nelson* v. *Belmont,* 274 Mass. 35, 46.

The findings of the master establish the facts that the restrictions apply to the defendants' lots for the benefit of the plaintiffs' lot; that they have not been abandoned; that the plaintiffs purchased their lot in reliance upon the restrictions, in the expectation that they would be free from competition in that vicinity in the conduct of a gasoline filling station upon their lot which was the only land in block C where such a station could lawfully be conducted; and that they have expended substantial amounts in the purchase, improvement and use of their land for the conduct of their business. The master found that "there is no reasonable possibility of the erection or use as a single family dwelling of any building on the defendants' property or on any lot fronting on Commonwealth Avenue in block C and that this results from the changed character and conditions of the neighborhood surrounding block C." This finding based upon his other findings is not conclusive as it is not supported by those findings. The trial judge was justified in reaching a different conclusion upon the entire findings of the master. We are of opinion that the character of the neighborhood where the plaintiffs' lot was located had not so changed as to render no longer possible the accomplishment of the purposes of the restrictions. Although there have been some changes in the neighborhood to which the restrictions apply outside of block C, upon the findings that part of the city is still essentially residential. The case is governed by *Riverbank Improvement Co.* v. *Bancroft,* 209 Mass. 217, *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, 387, *Vorenberg* v. *Bunnell,* 257 Mass. 399, *Doyle* v. *Wheeler,* 265 Mass. 256, *McLaughlin* v. *Eldredge,* 266 Mass. 387, and is distinguishable from *Jackson* v. *Stevenson,* 156 Mass. 496, *Boston Baptist Social Union* v. *Boston University,* 183 Mass. 202, *Loud* v. *Pendergast,* 206 Mass. 122, *McArthur* v. *Hood Rubber Co.* 221 Mass. 372. See also *Carr* v. *Riley,* 198 Mass. 70; *Prest* v. *Ross,* 245 Mass. 342.

The final decree is to be modified by striking out in the first and fourth paragraphs the following, "until January 1, 1950." As it is apparent that the insertion of a comma

after the word "family" and before the word "hotel" in the fourth paragraph of the final decree was a clerical error, it is to be omitted. As so modified the final decree is affirmed with costs.

*Ordered accordingly.*