STATE ex rel. CAROLINE GOTZIAN and Others v. DISTRICT COURT OF RAMSEY COUNTY and Another.

July 12, 1899.

Nos. 11,661—(29).

### City of St. Paul—Eminent Domain—Land Owned by City.

The board of public works of the city of St. Paul is (the city not objecting) authorized by the city charter to condemn, for a public street or alley, land owned by the city, and to award damages to it for such taking, and to assess the benefits of the improvement, precisely as if the city were a private owner of the property taken.

### Board of Public Works—Reassessment.

Such board is authorized by the city charter to make a reassessment of property benefited by a public improvement whenever the original is set aside for any cause, although it was set aside only as to a single lot, on the sole objection of its owner, and the other lot owners have paid the

original assessment, provided that the aggregate sum assessed against any lot does not exceed its proportional share of the benefits.

### Same—Constitution.

The charter provisions authorizing such a reassessment are constitutional.

### Same—Reassessment—Proportionate Benefit.

The finding of the trial court to the effect that the reassessment against the land of the relators was not demonstrably in excess of its proportional share of the benefits is sustained by the evidence.

Certiorari from the supreme court to the district court for Ramsey county and the Honorable William Louis Kelly, one of the judges thereof, to review a judgment of said court in the matter of a reassessment for opening an alley.  Affirmed.

*Ambrose Tighe,* for relators Gotzian and Freeman.

*H. J. & A. E. Horn,* for relator Hennessy.

*James E. Markham* and *Franklin H. Griggs,* for respondents.

START, C. J.

Certiorari to review a judgment of the district court for the county of Ramsey in the matter of a reassessment for opening an alley through block 14 of Whitney & Smith's addition to the city of St. Paul.  The city of St. Paul began proceedings for the opening of the alley in 1892, and in making the improvement the north 9 feet and the rear 25 feet of lot 3 and the north 9 feet and the rear 25 feet of lot 10 in the block were condemned.  The alley, as opened, and its relation to the lots in the block, are shown by the following diagram:

Whitney and Smith's Addition.

Lot 10 was owned by private parties, and lot 3 by the city in its proprietary capacity, and it had located upon the part of the lot not taken for the alley one of the engine houses of its fire department. The sum of $5,000 was awarded by the board of public works as damages to each of the owners of lots 3 and 10, which, with the incidental expenses, made the total cost of the improvement the sum of $10,198.30. To cover this cost, the board of public works of the city levied an assessment of $1,700 each on the lots benefited by the improvement, viz, lots 2, 3, 6, 7, 10, and 11. The relators Gotzian and Freeman, the owners of lot 2, paid the assessment before it became delinquent; so did the owners of lots 7 and 11; while the assessments on 3 and 10 were set off against the damages awarded for the part condemned, leaving $3,300 due to the owner of each of them. From the $5,100 paid by lots 2, 7, and 11, $3,300 was paid to the owner of lot 10, in full discharge of the balance of his damages, and the residue, $1,800, was paid to the city, as the owner of lot 3, in part payment of the balance of its damages.

The relator Hennessy, the owner of lot 6, alone refused to pay his assessment; and, having filed objections to it in the district court,

they were sustained on the ground that the board of public works had acted without jurisdiction. He also successfully contested a subsequent reassessment, in the sum of $1,700, of lot 6, for benefits accruing to it on account of the improvement, on the ground that it was in excess of its proportional part of the cost of the improvement. Thereupon the board of public works in June, 1898, made a second reassessment to make up the deficiency. It assessed $849.79 thereof against lot 6, which had thus far paid nothing, and $424.26 each on lots 2 and 11; making, with the original assessment already paid, an assessment of $2,124.26 against each of them. The owners of lots 2 and 6 filed separate objections to the reassessment in the district court. The objections were overruled as to each, and judgment entered accordingly.

1. All of the objections of the relator Hennessy to the reassessment in question meriting consideration are to the effect that lot 3, owned by the city of St. Paul, was already devoted to a public purpose, therefore the city had no power to condemn any portion of it for any other public purpose; hence, the board of public works had no authority to assess benefits upon other property for the payment of damages awarded to the city for the actual taking of a part of lot 3 for the proposed improvement. Or, in other words, the real question, so far as the relator Hennessy is concerned, is, did the board of public works of the city have the power to condemn the part of lot 3 taken for the alley in question?

It is conceded that the city owns lot 3 in fee, and not in trust for any particular public purpose. It therefore owns the lot in its proprietary capacity, and it may dispose of it as it sees fit. The object of the proceedings in question was to change the absolute title of the city to the part of the lot taken for the alley to one in trust for a special public use, which use specially benefited the lot owners abutting on the alley. Or, in other words, the proceedings were a taking of the property of the city, which it held as proprietor, and in which all the taxpayers of the city were directly interested, to devote it to a limited public use, for the special benefit of private landowners. As to the latter, the city must be regarded as a private owner of the lot, and entitled to damages for its taking for the specific public purpose equally with themselves. In no

other way can justice be done to the general taxpayers. If the city consents that its private property may be taken for such public use, it cannot equitably do so except upon condition that compensation be made to it for such taking in the same manner as to private owners. The city is not contesting the taking in this case, but it is simply insisting, for the benefit of the general taxpayers, that, as between it and the private landowners specially benefited by the taking, it shall be treated as a private owner. It necessarily follows that the rule invoked by the relators, to the effect that a general statutory power to condemn property for public use does not imply power to take property already devoted to a public use, has little, if any, application to this particular case.

We are, then, to inquire, in the light of the foregoing suggestions, whether the city of St. Paul was authorized by its charter to condemn, by its board of public works, the land in question, for a public use, and award damages to itself for the taking. The answer to the question depends on the construction to be given to the following provisions of the city charter:

"The city of St. Paul shall have the power to take private property for public use upon just compensation therefor being first paid or secured, such power shall be exercised through its common council or board of public works, or both, or other officers of said city, as provided in this act, or as may be hereafter provided by law." Municipal Code St. Paul, 375, § 17 (Sp. Laws 1874, c. 1, subc. 12, § 17).

"The municipal corporation of the city of St. Paul is hereby authorized and empowered to condemn land for * * * opening * * * any street * * * alley * * * and to condemn an easement in land across, over or under the property of corporations, * * * and to levy assessments for * * * the improvements * * * upon property fronting upon such improvement or upon the property to be benefited by such improvements." Municipal Code St. Paul, 98, § 95 (Sp. Laws 1889, c. 32, subc. 7, tit. 1, § 1).

The relators claim that these charter provisions authorize the taking only of private property for public use, but as between them and the city, representing the general taxpayer, the lot in question is private property. The proposition that a municipal corporation may, with the consent of the state, acquire and hold property in its

proprietary capacity (that is, acquire rights therein similar to those of private owners of property) is fully sustained on principle and by authority. The second provision of the charter which we have quoted authorizes, by necessary implication, if not expressly, the board of public works to condemn the land here in question. Authority to condemn private property is given in general terms by the first provision quoted, then, by the second-quoted provision, for the purpose of making it perfectly clear that the power extends to the property of corporations, whether devoted to a public purpose or not, express authority is given to condemn an easement in such property for the opening of streets and alleys. The word "corporation," as used in the charter, includes municipal corporations.

We therefore hold that the board of public works of the city of St. Paul is (the city not objecting) authorized by the city charter to condemn, for a public street or alley, land owned by the city, and to award damages to it for such taking, and to assess the benefits of the improvement, precisely as if the city were a private owner of the property taken.

2. The relators Gotzian and Freeman claim that the board of public works had no authority to reassess a lot which had paid its original assessment, to meet a deficiency in the cost of an improvement, which was caused by the fact that another lot benefited had defeated in part the assessment originally imposed on it. This is true, if the original assessment paid was the full proportionate share of the lot paying the assessment of the benefits conferred by the improvement on the lots benefited; otherwise, not.

Before this improvement was decided upon, it was necessary for both the board of public works and the common council to determine that it was necessary and proper, and that property could be found benefited to the extent of the damage, cost, and expenses necessary to be incurred thereby. Municipal Code, St. Paul, 101 (Sp. Laws 1891, c. 6, § 4, as amended by Sp. Laws 1891, c. 7, § 2). It must therefore be assumed that the benefits to property benefited by this improvement were prima facie equal at least to the amount of the damages awarded for the taking of the land for the improvement, and the cost and expenses thereof. Now, when the district court, on the objection of the relator Hennessy, set aside the as-

sessment on his lot on the ground that it was demonstrably greatly in excess of its proportional share of the benefits, it necessarily followed that prima facie one or more of the other lots had been assessed for less than their proportional share of the benefits. This finding, however, was not res adjudicata as to the other lot owners; nor was it so in favor of Hennessy, except to the extent that the assessment of $1,700 against his lot was excessive. To what extent it was excessive was left an open question. When the matter went back to the board of public works, it was not simply to readjust the assessment on lot 6 and reduce it to its proportionate share of the benefits, but for a reconsideration of the entire assessments for benefits. If, on such reconsideration, the board had found that lots other than lot 6 had been assessed for their full proportionate share of the benefits, then it could not add anything to their assessment, and lot 6 could only be assessed for the amount of its share of the benefits, although it might leave a deficiency.

The board, in the absence of anything in the record to the contrary, is presumed to have done its duty, and to have taken into consideration on the reassessment all of the lots benefited, and not simply lots 2, 6, and 11, and to have found that all of the lots except those named were originally assessed for and had paid the full amount of their proportional share of the benefits, but that such was not the case with lots 2 and 11, and that they should be assessed, in addition to the amount already paid, such further sum as would, in the aggregate, equal their proportionate share of the benefits. If the aggregate assessment against lots 2 and 11 is no more than their fair proportionate share of the benefits, their owners have no legal cause for complaint because lot 7 may have been assessed for more than its share of the benefits, and lot 6 for less. We are of the opinion that the board of public works had authority to make the second reassessment by virtue of the following provisions of the city charter:

"In all cases where   *   *   *   judgment has heretofore been refused or denied by the court, or the assessment, or any part thereof, as to any lot, lots or parcels of land,   *   *   *   for any cause whatever, has been   *   *   *   set aside or declared void by any court, the Board of Public Works shall, upon notice thereof by the city

treasurer, proceed without unnecessary delay to make a reassessment or new assessment upon all lots, blocks and parcels of land which have been or will be benefited by such improvement, to the extent of their proportionate part of the cost and expenses thereof, * * * and when the same shall have been made and confirmed by said board, it shall be enforced and collected in the same manner that other assessments are enforced and collected under this act. * * * And in all cases where judgment has been * * * denied by any court, or where any court, * * * shall set aside or declare void any assessment upon any lot or parcel of land, for any cause, the said lots or parcels of land may be reassessed or newly assessed, from time to time, until each separate lot, piece or parcel of land has paid its proportionate part of the costs and expenses of said improvements, as near as may be, to the benefits derived, or to be derived from such improvement. In case the amount of such reassessment shall be less than the first assessment upon the lots and parcels of land reassessed, the deficit shall be paid out of the local improvement fund." Municipal Code St. Paul, 139, § 59 (Sp. Laws 1887, c. 7, subc. 1, tit. 1, § 60).

When all of these provisions are considered together, their meaning is reasonably clear. They authorize a new assessment or reassessment of property benefited by a public improvement whenever and as often as any assessment is set aside for any cause by the court upon any lot or lots or parcels of land. If the assessment is set aside as to one lot only, all of the lots benefited may be reassessed, provided that the aggregate sum so assessed against any lot does not exceed its proportionate share of the benefits.

Counsel for relators Gotzian and Freeman also claim that this construction of the charter provisions renders them unconstitutional, because, where the assessment is set aside on the objection of a single lot owner, as to his property alone, the other property owners affected by the reassessment have no opportunity to be heard as to the necessity for such reassessment. But, as already suggested, the action of the court in setting the assessment aside is not res adjudicata as to them, and, when application is made for judgment on the reassessment, notice must be given to them, and they may appear and show that the original assessment was correct as to them, in that they were assessed for their full proportionate share of the benefits. The objections of counsel as to the reassessment apply to the original assessment with equal force, for

the same notice, and none other, is required in each case. If the charter is unconstitutional as to the one, it is as to the other. It is constitutional as to both, for it provides for notice to the lot owners of a time and place when and where they may be heard before judgment is taken against them.

The trial court, by its order and judgment herein, necessarily found that the aggregate assessment against the lot owned by the relators Gotzian and Freeman was not demonstrably in excess of their proportional share of the benefits of the improvement. The finding is sustained by the evidence.

Judgment affirmed.