IN THE MATTER OF THE ESTABLISHMENT OF A RESTRICTED RESIDENCE DISTRICT ALONG SUMMIT AVENUE FROM SELBY AVENUE TO THE MISSISSIPPI RIVER IN THE CITY OF ST. PAUL v. LOUIS N. SCOTT AND OTHERS.[1]

January 6, 1922.

No. 22,567.

**Restricted residence district—judgment of city council.**
    1. What territory is to be included in a restricted residence district, established under chapter 128, Laws 1915, is entrusted to the sound judgment of the city council. That existing apartment buildings are not included and that certain residential territory is excluded, do not justify the courts in holding the council's action arbitrary or void.

[1]Reported in 186 N. W. 292.

**Assessment of benefits to include expense of statutory proceeding.**

2. The law is construed as intending the costs and expenses of the proceeding to be included in the amount which the assessment for benefits is to defray. .

**Admission of evidence.**

3. No prejudicial error occurred in the admission or exclusion of evidence on the trial.

**Award of damages and benefits by appraisers appointed by the court.**

4. The appellants on appeal to the district court, were, as a matter of right, entitled to a final award of damages and assessment of benefits by appraisers appointed by the court, since timely and proper objections to a confirmation of the action of the appraisers appointed by the council were filed, wherein complaint was made of the damages awarded and the benefits assessed to appellants.

Proceeding by the city of St. Paul to establish a restricted residence district under Laws 1915, c. 128. Appraisers having been appointed by the city council to determine damages to property included in the proposed district and assess benefits, Louis N. Scott and others filed objections to and took part in the hearing before the council, where the objections were overruled and the awards and assessments confirmed. Objectors appealed to the district court for Ramsey county from the awards and assessments, where the appeal was heard by Hanft, J., who confirmed them. From an order denying their motions to amend the findings and from an order denying their motions for a new trial, objectors appealed. Reversed and remanded.

*James Schoonmaker, William F. Hunt, Thomas C. Fitzpatrick, C. D. O'Brien* and *M. D. Munn,* for appellants.

*Arthur E. Nelson, Carleton F. McNally* and *Moore, Oppenheimer, Peterson* and *Dickson,* for respondent.

HOLT, J.

Under the power conferred by chapter 128, p. 180, Laws 1915, the city council of the city of St. Paul established a restricted residence district along Summit avenue for a distance of some four miles, a

few tracts being omitted. The council also appointed appraisers to determine the damages to the property included in the district and to assess benefits. Appellants filed objections to the report of the appraisers, one objection being to the amount of the damages awarded and benefits assessed in respect to the objectors' property. The council overruled the objections and confirmed the awards and assessments. There was an appeal to the district court, a trial and findings with judgment in all things affirming what had been done in the premises.

The action of the city council in establishing this district is called in question. It appears that where expensive apartment buildings stand on Summit avenue the land was not included in the district.

Also, that on the south side of the avenue between Prior and Cleveland avenues no lots adjacent to Summit were taken in. The legislature committed the establishment of restricted districts to the judgment of the city council, and courts will not disturb its decision, unless plainly contrary to the law under which it was required to act. There certainly was nothing arbitrary in not including property upon which already were expensive structures not suitable to be in a residential district. As to the property between Prior and Cleveland avenues, the explanation of its omission, suggested at the trial, is that a proceeding had been begun prior to the one before us, in which that and other adjacent property was sought to be set apart as a residential district, but which proceeding had been abandoned at the time of the trial herein. This situation presents no ground at all for judicial interference with the district established. The city council is at liberty at any time to make the omitted territory a residential district by itself or in connection with other territory.

An assignment of error challenges the propriety of charging the council appraisers' fees and the cost of the proceeding against the benefits assessed. The law is silent in respect to the defrayal of the expenses, except that on appeal the compensation of the appraisers appointed by the court may be taxed as costs against appellant (subdivision 12, § 3), but, there being no provision for the payment of the expenses connected with the establishment of a residential

district, we conclude it was contemplated that the same should be defrayed from the funds assessed against benefited property. This clause, in subdivision 5, § 3, "but the total assessment for benefits shall not be greater than the aggregate net award of damages," cannot be taken literally, for interest is to be computed on the damages awarded from the date of the filing of the original report. When there has been a delay of years, as in the instant case, the amount will be considerable, and there is no provision to increase benefits correspondingly. Therefore we take it that the phrase "the aggregate net award of damages" is meant to include what the damages to be paid will ultimately amount to, including the interest that might accrue and the expenses of the proceeding, so that the sum total of the benefits assessed should be no more than that sum. That is, even though the benefits may be in fact much greater, yet no more should be assessed than sufficient to pay for the total outlay connected with the establishment of the district. The act is not as explicit in respect to expenses as might be desired. If the proceeding is finally abandoned the expenses must necessarily fall upon the city, because there is no provision under which they may be charged against any person or property. But when the district is established, we take it the act intended to charge the whole cost, including expenses of the proceeding, to the property benefited.

There are rulings on the exclusion and the reception of evidence complained of. They have been examined, but we find nothing therein that is erroneous or prejudicial to appellants. In appeals of this nature, when the court is authorized to interfere with the determination of the appraisers only if it is proven that they acted fraudulently, arbitrarily, upon a demonstrable mistake of fact or an erroneous principle of law, it is plain that the admission or rejection of some testimony of experts as to damages or benefits can have little or no effect.

The learned trial court refused to appoint appraisers as demanded by appellants, holding the determination made by the appraisers appointed by the city council final as to damages and benefits, unless, on appeal to the district court, it was shown that those appraisers acted arbitrarily, or upon an erroneous principle of law or a demon-

strable mistake of fact. This presents the main question raised on the appeal.

The procedure in awarding damages and assessing benefits is found in section 3 of said chapter 128, p. 180, Laws 1915. It is first provided that the city council shall appoint five appraisers to view the premises and appraise the damages which may be occasioned by the establishment of the restricted residence district. It is to be noted that this appointment is made without notice to parties interested, and without their being heard upon the qualifications of the appointees. The appraisers shall give notice by publication of the time and place where they will meet to view the premises and appraise the damages and assess the benefits (third subdivision).

A copy of the published notice must also be served upon the person in possession of the tract of land affected (fourth subdivision).

"At the time and place mentioned in the notice, the said appraisers shall meet and thence proceed to view the premises, and may hear the evidence or proof offered by the parties interested and may adjourn from time to time for the purposes aforesaid. When their view and hearing shall be concluded, they shall determine the amount of damages, if any, suffered by each piece or parcel of land of which each piece or parcel of land in the district is a part. They shall also determine the amount of benefits, if any, to each such piece or parcel of land. If the damages exceed the benefits to any particular piece, the excess shall be awarded as damages. If the benefits exceed the damages to any particular piece, the difference shall be assessed as benefits, but the total assessment for benefits shall not be greater than the aggregate net award of damages" (fifth subdivision).

The appraisers must file a report of their doings with the city clerk wherein they shall state costs of the proceedings (seventh subdivision).

Then a notice must be given of the time when the report will be considered by the council which "shall have power in their discretion to confirm, revise or annul the appraisement and assessment

\* \* \* provided that said council shall not have the power to reduce the amount of any award, nor increase any assessment." If annulled the council shall appoint new appraisers. But here again there is no provision for the landowners to be heard upon such appointment (eighth subdivision).

"If not annulled or set aside, such awards shall be final, and shall be a charge upon the city, for the payment of which the credit of the city shall be pledged." If any appeals are taken from the order confirming the appraisement, the payment of the damages awarded shall be extended until 60 days after final determination of all appeals taken, and, in case of any change in the awards or assessments upon appeal, the council may, within 60 days after such determination, by resolution set aside the entire proceeding (ninth subdivision).

The rights acquired by the proceedings shall vest absolutely in the city (tenth subdivision).

"Any owner of land within said district who deems that there is any irregularity in the proceedings of said council, or action of the appraisers, by reason of which the award of the appraisers ought not to be confirmed, or who is dissatisfied with the amount of damages awarded to him or the assessment thereon, may, at any time before the time specified for the confirmation of the award and assessment, \* \* \* file with the city clerk in writing, his objections," and thereby secure the right to appeal to the district court by serving a specified notice. "There shall be no pleading on any appeal, but the court shall determine in the first instance whether there was in the proceedings any such irregularity or omission of duty prejudicial to the appellant and specified in his written objection that as to him the award or assessment of the appraisers ought not to stand, and whether said appraisers had jurisdiction to take action in the premises" (eleventh subdivision).

Then follows the here important provision of the twelfth subdivision: "The case may be brought on for hearing on eight days' notice, at any general or special term of the court, and the judgment of the court shall be to confirm or annul the proceedings, only

so far as the said proceedings affect the property of the appellant proposed to be included in said district or damaged or assessed, and described in said written objection.   In case the amount of damages or benefits assessed is complained of by such appellant, the court shall, if the proceedings be confirmed in other respects, appoint three disinterested qualified voters, appraisers to re-appraise said damages, and reassess benefits as to the property of appellant.   The parties to such appeal shall be heard by said court upon the appointment of such appraisers, and the court shall fix the time and place of meeting of such appraisers, they shall be sworn to the faithful discharge of their duties as such appraisers, and shall proceed to view the premises and to hear the parties interested, with their allegations and proofs pertinent to the question of the amount of damages or benefits."   These appraisers shall report their determination to the court.   This award shall be final, unless set aside by the court.

As we construe the foregoing provisions, a landowner, who has filed objections to a confirmation by the city council, may appeal, and, if the court determines that the proceedings are valid, he may, nevertheless, have a reappraisement by appraisers appointed by the court whenever one of the objections filed by him complains of the amount of damages awarded or benefits assessed as to his land. The last part of the eleventh subdivision above quoted as to the question to be determined by the court, in the first instance, refers, not to the amount awarded or assessed by the council appraisers, but to the proceedings themselves as to whether there are irregularities therein which prevented the council appraisers from taking any valid action.   If the proceedings are found valid without considering the objector's complaint in respect to damage or benefits, the court, under the last provision of subdivision 11, shall let them stand, and then proceed, under subdivision 12, to appoint appraisers if the appellant has, in his objections, complained of the damages or benefits.

The language in the twelfth subdivision is mandatory as to the appointment by the court of reappraisers in the given case, and for a hearing as to the disinterestedness of such appraisers.   And there appears good reason why this should be so.   This law combines the

award of damages, for the taking of property under the right of eminent domain, with the assessment of benefits, a taxation matter. As to both it has been held that, at some stage in the proceedings, the owner must be accorded a trial as to the amount before an impartial tribunal. Langford v. County Commrs. of Ramsey County, 16 Minn. 333 (375); State v. Messenger, 27 Minn. 119, 6 N. W. 457; Everington v. Board of Park Commissioners of City of Minneapolis, 119 Minn. 334, 138 N. W. 426. And it would seem that, unless the tribunal is constituted of persons elected or selected for a public office, the landowners should have an opportunity to be heard upon the qualification of those selected. As to the qualification of the appraisers appointed by the court, the act gives a right to be heard, but not as to the council appointees.

Aside from the explicit language that the court, on appeal, shall appoint appraisers to determine damages and benefits anew, where the objections filed include a complaint as to damages awarded or benefits assessed, consideration should be given to the apparent difference in the wording of the directions to the appraisers appointed by the council and to the appraisers appointed by the court. As to the former the direction is that they "may hear the evidence or proof offered by the parties interested;" as to the latter it is they "shall proceed to view the premises and to hear the parties interested with their allegations and proofs pertinent to the question of the amount of damages or benefits."

It is true that in statutes courts sometimes construe the word "may" as mandatory as the word "shall." But there is no occasion for such a construction here, for we think the appraisers appointed by the council do not constitute such a tribunal as our law intended to invest with full power to authoritatively hear and determine a matter. The party interested has ordinarily some rights to be heard upon the disinterestedness and general qualifications of triers of fact, unless such triers are selected by virtue of being elected to some office or position. This law assures this right in respect to the ones appointed by the court only. This would seem to be a valuable right, the denial of which might challenge the validity of the award or assessment on constitutional grounds. In all cases

where the exercise of the right of eminent domain has been granted, our legislatures have been careful to preserve to the owner the right to a final hearing as to damages either before the court, or before appraisers appointed by the court, or before an official board. No act, to our knowledge, has attempted to make the award of appraisers, chosen from nonofficials by a city council without notice to the landowner or opportunity to be heard, final.

In City of St. Paul v. Nickl, 42 Minn. 262, 44 N. W. 59, the board of public works appraised and the court reviewed the amount of the appraisal.

In Bruggerman v. True, 25 Minn. 123, the law provided for an appeal to three members of the board of county commissioners, and it was held this secured impartial appraisers, since they were duly elected officials.

In McKusick v. City of Stillwater, 44 Minn. 372, 46 N. W. 769, the act provided for an appeal on the question of damages to appraisers appointed by the court, and the same is the case of State v. City of Montevideo, 142 Minn. 157, 171 N. W. 314; the charter provisions there involved give the landowner the right upon appeal to have a reassessment of damages by court appointed appraisers as stated in the opinion.

The foregoing consideration naturally leads to the conclusion that the legislature advisedly used mandatory language when assuring the owner of the right to have final appraisers appointed by the court and as to whose qualifications he may be heard. We hold that an interested party in a proceeding under chapter 128, p. 180, Laws 1915, is entitled to have his damages awarded and benefits assessed by court appraisers, if he seasonably files proper objections and appeals to the district court from the city council's order of confirmation.

The order, insofar as it denied appellants a hearing on the question of damages by appraisers appointed by the court, is reversed, and the cause remanded for further action in conformity herewith.

Reversed and remanded.

HALLAM, J. (concurring in result).

I concur in the result. I agree that on appeal to the district court the statute gave the appellant the right to a reappraisement by appraisers appointed by the court and gave the parties the right to be heard on the appointment of such appraisers. The question whether a party has a constitutional right to be heard upon the qualification of the appraiser selected, does not seem to me to be involved in this case. The legislature has not denied the right; whether it could do so is a moot question.