STATE EX REL. NELS P. MADSEN AND ANOTHER v. JAMES G. HOUGHTON.[1]

December 12, 1930.

No. 28,152.

[1]Reported in 233 N. W. 831.

78

*Prendergast, Flannery & Young,* for appellant.

*Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for respondent.

HILTON, J.

Appeal from an order overruling a general demurrer to the answer with a certificate of importance and doubt and quashing the alternative writ of mandamus.

Appellants (relators) are the owners of lots 11 and 12, block 8, of Badger and Penny's Addition to the city of Minneapolis. Respondent is the building inspector of the city; without his permission it is unlawful for any person to commence the erection of a building therein.

On March 4, 1930, appellants applied to him in due form for a permit to erect an apartment building on said lots. They claim the right to construct the building thereon under a general zoning ordinance covering the entire city approved April 17, 1924. The ordinance was passed under the authority of L. 1921, p. 267, c. 217, as amended by L. 1923, p. 521, c. 364. The 1923 law added the power to regulate the height of buildings, the arrangement of buildings on lots, and the density of population. These laws are hereinafter referred to as the "zoning laws." They do not in terms refer to the police power but do state they are for the purpose of "promoting public health, safety, order, convenience, prosperity and general welfare."

These laws are simply enabling acts authorizing any city now or hereafter having 50,000 inhabitants or over, acting through the governing body, by ordinance to regulate the location, size, and use of buildings, etc. (general zoning of the entire city).

The zoning ordinance placed the property here involved in what is known as a "multiple dwelling district," a designation which would permit the erection of a building such as is contemplated by appellants.

The permit was refused for the reason that said lots were within restricted residence district No. 44, which expressly forbade the construction of such a building therein. District No. 44 was established under authority of L. 1915, p. 180, c. 128, a resolution relative thereto having been adopted by the city council May 12, 1922, and approved May 18, 1922. The 1915 law was by reference made a part of the Minneapolis home rule charter (c. 20) adopted November 2, 1920. The restriction here involved was imposed under the power of eminent domain. After the adoption of said resolution and the establishment of the district, appraisers were duly appointed to assess damages and benefits. Appellants or their predecessors in interest were awarded and accepted damages for the restriction on their lots. No appeals were taken.

Questions involved are whether the restricted district No. 44 was legally established and, if so, did the general zoning laws and the ordinance adopted thereunder remove the restriction imposed on these lots and authorize the construction of apartment buildings thereon?

Appellants advance the following propositions:

(A) "Chapter 128, Laws of 1915, provides for the taking of private property for a private use and therefore contravenes the provisions of Section 7 of Article 1 of the Constitution of the State of Minnesota and Section 1 of the 14th Amendment to the Constitution of the United States.

(B) "If restrictions were imposed upon relators' property by the city simply through the eminent domain proceedings, such restrictions were modified so as to permit the erection of an apart-

ment house thereon when the city council authorized such use of said property by the comprehensive zoning ordinance of April 3, 1924.

(C) "Chapter 128, Laws of 1915, authorized the city of Minneapolis through eminent domain proceedings to acquire the power to impose restrictions. It was provided that the power thus acquired was to be exercised by the enactment of ordinances. The city stopped with the completion of the eminent domain proceedings. No ordinance, not even a resolution was passed exercising its power to impose restrictions. Consequently restrictions were not imposed upon relators' property."

■ We first consider appellants' "A." L. 1915, p. 180, c. 128, was declared constitutional in State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585. Notwithstanding the attack now made on that decision by appellants, we affirm and adhere to it. The decisions relative to this law, preceding and following the one above referred to, are not here important.

It may be well here also to refer to the fact that the constitutionality of the zoning laws was affirmatively determined in State ex rel. Berry v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012. That case was affirmed by the United States Supreme Court in 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832. To just what extent, if any, a property owner may successfully question the validity of any specific provisions of that ordinance when it is enforced or attempted to be enforced is not here for consideration.

■ We next consider appellants' "B." Did the zoning laws and the ordinance adopted thereunder affect L. 1915, p. 180, c. 128, and the restrictions placed on appellants' property thereunder? In 1923 the legislature enacted c. 133 of the session laws of that year, expressly amending L. 1915, p. 180, c. 128. The amendatory law provided the manner in which the restrictions such as the ones here involved might have been vacated or changed. That same session of the legislature, after providing a way for the removal of such restrictions, amended the original zoning law as hereinbefore stated

by enlarging the scope of the first law to include the regulation of "height of buildings, the arrangement of buildings on lots, and the density of population." Had there then been a thought in the legislative mind that the act was to affect the 1915 law as amended, it would have so stated in the zoning amendment. It is manifest that there was no intention to affect the 1915 law, and the restrictions imposed thereunder still obtain.

■ Now as to appellants' "C." In § 17, c. 4, of the Minneapolis charter, appears the following:

"If in any case any of the powers granted to said City Council, to be exercised by ordinances named in section five (5) of. this chapter, cannot well be exercised by the passage of ordinances, then said City Council may exercise any of said powers by means of the passage of resolutions."

The city council has the right within reasonable bounds to determine under this provision as to when action shall be taken by resolution rather than by ordinance. We think the council properly acted by adopting the resolution. It may be that neither the ordinance nor resolution was necessary and that the 1915 law is workable and complete in itself.

The title of L. 1915, p. 180, c. 128, reads:

"An act authorizing cities of the first class to designate and establish restricted residence districts and to prohibit the erection, alteration and repair of buildings thereon for certain prohibited purposes."

Section 1 thereof provides:

"Any city of the first class may, through its council, upon petition of fifty (50) per cent of the owners of the real estate in the district sought to be affected, designate and establish by proceedings hereunder restricted residence districts within its limits wherein no building or other structure shall thereafter be erected, altered or repaired for any of the following purposes, to-wit, * * * apartment houses, tenement houses, flat buildings * * *."

Section 4 reads:

"As soon as such condemnation proceedings have been completed, it shall be the duty of such council to cause maps or plats of such restricted residence district to be made, with a list of the parcels of land within such district, and to file one of such maps and list duly certified by the president of the council and the city clerk, in each of the following offices, to-wit, the office of the city engineer, the office of the register of deeds of the county and the office of the city clerk, and the same shall be prima facie evidence of the full and complete condemnation and establishment of said restricted residence district."

Section 5 provides:

"The council shall have the power to enact ordinances for the enforcement of the rights which shall be acquired under this act, * * *." Such ordinances were not for the purpose of acquiring rights (restrictions) but for the purpose of enforcing such restrictions.

It will be observed that in the 1915 law the power is granted to the city council to designate and establish restricted districts. Such designation and establishment were to be effected by "proceedings hereunder." Numerous detailed proceedings were provided for in the act, all of which have been complied with. There was a full, complete, and lawful condemnation proceeding. When the required provisions were complied with and the awards paid, the lands were "deemed to be taken and appropriated for the purpose of this act."

The proceedings were entitled: "In the matter of designating and establishing a restricted residence district in the vicinity of Grand avenue," etc. The commissioners' report, award, and assessment were filed in the office of the city clerk and reported to the city council. The award and assessment lists were confirmed by the city council and officially published in the official city paper as required by law. All proceedings in said matter known and designated as residence district No. 44 were on file in the office of the city clerk.

When these necessary acts were performed, the restrictions were effectually imposed. It then became unlawful to erect in district No. 44 the building contemplated by appellants. Such erection was expressly prohibited by § 1 of the act. The comprehensive resolution itself also forbade such erection.

A careful reading of the whole act requires the conclusion that the council in proceeding by resolution (if either a resolution or ordinance was necessary) acted well within the powers conferred upon it. Proceeding in that way was as effective as if by ordinance —an ordinance would accomplish no more than was accomplished by the adoption of the resolution. All rights of interested parties would be equally protected in either way. An ordinance was not necessary.

The building restrictions were properly placed on appellants' lots and remain as such; no constitutional rights of the owners have been invaded.

Order affirmed.

