WARREN B. BURGER v. CITY OF ST. PAUL AND OTHERS.[1]

February 26, 1954.

No. 36,011.

---

[1]Reported in 64 N. W. (2d) 73.

*Timothy P. Quinn,* Corporation Counsel, and *Louis P. Sheahan,* Special Assistant Corporation Counsel, for appellants other than Jansen.

*D. D. Daly,* for appellant Jansen.

*Faricy, Moore & Costello, Harry G. Costello,* and *B. Warren Hart,* for respondent.

NELSON, JUSTICE.

Plaintiff instituted suit against the city of St. Paul and others on December 13, 1951, to have certain resolutions and a building permit issued thereunder declared null and void; to restrain the defendants from publishing, enforcing, or otherwise giving effect or acting pursuant to the final resolution; and to enjoin the defendant Alvin J. Jansen from remodeling or occupying his structure as a fourplex dwelling unit. The court below found in favor of the plaintiff, enjoining the defendant city, its commissioners, and members of the city council from issuing any permits for remodeling the structure on the premises of defendant Jansen into a fourplex and enjoining the defendant Jansen from using his premises involved in this litigation as a dwelling for more than two families. The defendants moved in the alternative for amended findings of fact and conclusions of law or for a new trial, which motions were denied by order of the trial court. Defendants appeal from that order.

Plaintiff was in the year 1951 and still is one of the owners of lot 11, block 1, Summit Park Addition, known as 666 Summit avenue in St. Paul, which lot was improved with a duplex in 1925. The defendant Jansen in 1951 became and still is the owner of lots 17 and 18 in block 16, Holcombe's Addition, known as 669 Summit avenue, lot 18 of which had been improved with a single residence in 1894. The two structures belonging to plaintiff and defendant Jansen are approximately opposite each other on Summit avenue.

It appears that between the years 1917 and 1922 the council of the city of St. Paul, pursuant to L. 1915, c. 128, created a restricted

residence district along Summit avenue in St. Paul from the intersection of Summit avenue and Selby avenue to the Mississippi River by condemnation proceedings. These proceedings affected and included properties now owned by plaintiff and defendant Jansen. Those who were then the owners of said lots joined in a petition for the creation of the "Restricted Residence District." Assessments for benefits were levied and awards for damages made as provided in condemnation proceedings. The restrictions established were in full force and effect at the time plaintiff and defendant Jansen acquired their respective properties.

In the fall of 1951, defendant Jansen obtained a permit from the council of the defendant city of St. Paul to remodel his single-family dwelling into a duplex, but later he applied for a permit to remodel the same structure into a fourplex, and this latter application was granted December 6, 1951, over objections entered by the plaintiff. Authority was granted to the defendant Jansen by the city council under resolution, council file No. 158173, later merged in resolution, council file No. 158242; the latter duly approved December 12, 1951, and published in the "Saint Paul Legal Ledger," an official newspaper, December 15, 1951. These resolutions were passed after the board of zoning had unanimously recommended that permission to remodel into a fourplex be denied and the council of the city of St. Paul had overruled the recommendation of the board of zoning. Plaintiff commenced his action a week later.

L. 1943, c. 246, amended L. 1915, c. 128, by providing that under certain circumstances existing structures of a stipulated size within the restricted residential districts created pursuant to L. 1915 could be altered to accommodate up to four families by special permission of the city council. Pursuant to said L. 1943, c. 246, St. Paul Zoning Ordinance No. 8550 was enacted August 26, 1944; and St. Paul Zoning Ordinance No. 5840, which had been enacted on August 22, 1922, was thereby amended to enable structures in the restricted area to be remodeled and reconstructed into three or four multiple dwellings although the restrictions had at all times theretofore limited the area to single dwellings or duplexes except for such

apartment houses and otherwise multiple dwellings which existed and were permitted to remain when the restrictions were originally applied under L. 1915, c. 128.

It appears that defendant Jansen was granted his permit and authority to remodel his single structure into a fourplex pursuant to said Zoning Ordinances Nos. 5840 and 8550.

In 1923 the 1915 act was amended by L. 1923, c. 133, which provided that the restrictions created under the 1915 act could be removed in the same manner as they had been originally imposed. The properties involved in this case have never been removed from the restrictions of the 1915 act under the process prescribed in the 1923 amendment.

The trial court made findings in effect declaring that the council of the city of St. Paul had no authority to permit Jansen to remodel his single structure residence into a fourplex due to the restrictions made effective by condemnation proceedings and that the permit for remodeling defendant Jansen's residence was and is null and void; enjoining the council from issuing any permit for remodeling Jansen's residence into a fourplex; and enjoining defendant Jansen from using his residence for more than two families.

The defendants assert in effect that conditions where these properties are located have changed in character to the extent that it is no longer suitable for only single- or double-unit dwellings and that owning residence property such as defendant Jansen purchased in 1951 becomes a burden upon the resources of the owner and unprofitable unless he be permitted to by-pass the restrictions and recondition the residence on his lots into a multiple dwelling sufficient to house four families or what is commonly called a fourplex. The defendants contend that this may now be lawfully attained under the amendment of L. 1915, c. 128, § 1, to be found in L. 1943, c. 246, and Zoning Ordinance No. 5840, as amended, supplemented by Zoning Ordinance No. 8550 proceeding under police powers.

The amendment contained in L. 1943, c. 246, reads in part as follows:

"* * * nothing herein contained shall be construed so as to prohibit the council of any such city of the first class from permitting

the remodeling or reconstruction of the interior of any structure in any such restricted residence district which possesses a gross ground area delineated by its foundation walls of at least 1,000 square feet, so that the same shall contain separate accommodations for several, not in excess of four, families; provided that the substantial alteration of the exterior of any such structure shall not be authorized in any such case; and provided further, that such city council shall expressly find in each such case that such remodeling or alteration shall be consistent with the public health and safety."

L. 1915, c. 128, § 1, provides that any city of the first class may through its council, upon petition of 50 percent of the owners of the real estate in the district sought to be affected, designate and establish by proceedings thereunder restricted residence districts within its limits wherein no building or other structure shall thereafter be erected, altered, or repaired for any of the purposes therein enumerated. Section 1 further states: "No building or structure erected after the creation of such district shall be used for any purpose for which its erection shall be prohibited hereunder." The council of the city of St. Paul was given power of eminent domain under § 2 to proceed to designate and establish restricted residence districts. It was further provided that, when such proceedings shall have been completed, the right to exercise such powers shall be vested in the city.

L. 1915, c. 128, § 1, was amended by L. 1923, c. 133, to provide that any restricted districts created under the 1915 act could be removed by the council on petition of 50 percent of the affected property owners in the same manner as provided for creating such districts, with damages and benefits to be appraised and paid as provided in the act.

■ The validity of the establishment of the restricted residential district and accompanying use restrictions with which we are here concerned has not been questioned, and there is no denial that both the plaintiff and defendant Jansen acquired their respective properties with notice of those restrictions. Plaintiff purchased the property of which he is one of the owners in reliance upon the

restrictions limiting the area to the use of single- and double-unit dwellings with a right to expect that every other lot owner in the restricted area would comply with the use restrictions. When defendant Jansen purchased, he had advantage of the same restrictions as to the lots of which he became owner. Every lot owner in this area assumed and accepted a burden consisting of the use restriction against his or her property for which he or she received in value or in return a like use restriction against every other lot owner in the area with the right to enjoy the same. There was at no time the taking of physical property, but there has been at all times since the establishment of the restricted residence district a restriction on use. See, State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585.[2]

The restriction on use here came into being under the exercise of the powers of eminent domain through condemnation proceedings whereby every right under such procedure was accorded every owner pursuant to the provisions of L. 1915, c. 128, beginning with the authorized action of the city council, with a right to be heard by the district court as to the selection of appraisers if appeal should be taken by any owner from the findings of the appraisers appointed by the city council, and with a right of appeal from the district court findings to the court of last resort in the state. The only exception under this chapter is that a trial *de novo* in the district court on award of damages and assessment of benefits shall be heard by the trial court without a jury, and this procedure in condemnation was approved in Minnesota as early as Ames v. Lake Superior & Mississippi R. Co. 21 Minn. 241.

It is settled law in Minnesota that easements, whether in the nature of a right of way, a restrictive covenant, or a negative or

---

[2]State ex rel. Madsen v. Houghton, 182 Minn. 77, 233 N. W. 831, held that building restrictions which had been imposed under L. 1915, c. 128, were not affected by the zoning laws of 1921 and 1923, having reference to L. 1921, c. 217, and the amendment thereto by L. 1923, and zoning ordinances adopted thereunder by cities of the first class, and that such restrictions, the result of condemnation proceedings under the 1915 act and amendments thereto, remain in full force and effect.

equitable easement, are property within the meaning of the Minnesota constitution and cannot be taken without compensation or be removed by mere zoning under the police power. Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

Adams v. C. B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493; Strauss v. Ginzberg, 218 Minn. 57, 15 N. W. (2d) 130, 155 A. L. R. 1000; Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; In re Petition for Establishment of County Ditch No. 78, 233 Minn. 274, 47 N. W. (2d) 106; United States v. Wheeler Township (8 Cir.) 66 F. (2d) 977.

For example, in drainage proceedings our statutes declare that, when drainage is undertaken by public authority rather than in the exercise of private right, all damage to landowners must be compensated. If a governmental subdivision were exercising the police power, without more, the case would be one of uncompensated duty of submission. The statute governing this procedure requires compensation to all who suffer damages. Therefore, it is of no consequence that there may be an element of police power activity in the proceeding for invoked also are the powers of taxation and eminent domain. Highways are established and maintained by the police power, yet, abutting property owners, whose property is damaged but not taken, are now entitled to compensation. This was not so before the amendment of constitutions to require compensation for damage or destruction as well as taking. In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47.

In In re Petition for Establishment of County Ditch No. 78, *supra,* a drainage ditch proceeding, it was held that an easement is property and when taken for public use the owner ordinarily is entitled to compensation. In order to meet the requirements in establishing a drainage ditch in a district or area so-called, there must be satisfactory proof that it will serve a public benefit and utility and that its establishment will promote the public health and welfare. Throughout the proceedings and when established, it remains sub-

ject to the proper exercise of the police power of the state, even though the district is limited to a restricted area. Nevertheless, damage, if any, to property owners in the district will result from the exercise of the powers of eminent domain. So it is immaterial that from the standpoint of public health or public welfare the police power justifies the drainage undertaking. The property is taken or damaged or destroyed not by the police power but by that of eminent domain. Hence, the right to compensation is absolute. That our statutory drainage proceedings invoked the power of eminent domain is plain. That is why the statutes in such mandatory fashion require compensation for all damage done, and this is the rule in drainage proceedings even though the taking of property under our drainage laws is excepted from the provisions of the general eminent domain statute by M. S. A. 117.01.

In Adams v. C. B. & N. R. Co. 39 Minn. 286, 295, 39 N. W. 629, 634, 1 L. R. A. 493, where this court had occasion to consider the rights of an abutting owner where property has been taken by eminent domain, it was held that "the owner of a lot abutting on a public street has, independent of the fee in the street, as appurtenant to his lot, an *easement* in the street in front of his lot to the full width of the street, for admission of light and air to his lot, which *easement* is subordinate only to the public right." (Italics supplied.)

■ The defendants contend that the only time that a private person has an enforceable easement in abutting property created under the exercise of the powers of eminent domain is in connection with public streets in order to give the owner access to his property. This court in the above case recognized an easement for entirely different reasons. It would appear that there is in fact no real distinction, whether it be the "taking" for a public street or for some other public use when property has been subjected to the powers of eminent domain. This court further said in that case (39 Minn. 290, 39 N. W. 631):

"* * * But it may destroy or materially impair it by rendering it impossible for the owner of it to enjoy it to the full extent that he is entitled to. Such destruction or impairment is within the meaning

of the word 'taken,' as used in the constitution, as fully as is the depriving the owner of the possession and use of his corporeal property."

M. S. A. 117.02, subd. 2, defines "taking" by condemnation proceedings in this state to include "every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property," and it has been held that "interference with property" is broad enough to include the erection of structures which may later in fact reduce the value of ownership or enjoyment of property. State, by Peterson, v. Bentley, 231 Minn. 531, 45 N. W. (2d) 185. Section 117.02, subd. 3, defines the word "owner" as "all persons interested in such property as proprietors, tenants, encumbrancers, or otherwise." See, In re Petition for Establishment of County Ditch No. 78, *supra*.

In Summers v. Midland Co. 167 Minn. 453, 209 N. W. 323, 46 A. L. R. 816, plaintiff and defendant executed an ordinary contract for deed involving real estate in the city of Duluth. Later the city condemned the property in question for a restricted residence district under G. S. 1923, §§ 1618 to 1621. Plaintiff, as vendee, had entered into the contract with the intention of erecting a gas station. He demanded of defendant, as the vendor, that he convey title free and clear of all encumbrances or allow rescission. Defendant refused, and plaintiff brought suit. This court found for the defendant on the ground that taking by condemnation was in effect a purchase and a sale between plaintiff, the vendee in the contract, and the state, and since there is full compensation in condemnation proceedings in theory, plaintiff suffered no loss. This court further held therein that the plaintiff could not rescind and recover what he had paid thereon because of the then existence of an *easement* which restricted the use of the property involved acquired through condemnation proceedings subsequent to the making of the contract. While this court did not state to whom the easement belonged, it regarded the restriction created by condemnation proceedings as an easement. It made no special classification as to whether it constituted an equitable easement, a negative easement, or a reciprocal

negative easement. It is significant that these restrictions were created by condemnation which in legal effect is a forced sale and in that respect quite comparable to the exchange of deeds containing mutually restricted covenants. It would seem to make little if any difference whether the plaintiff in the instant case is regarded as having a legal or an equitable interest in the restrictions created under the 1915 act because both legal and equitable interests are protected in condemnation proceedings under Minnesota law. Moritz v. City of St. Paul, 52 Minn. 409, 54 N. W. 370; 6 Dunnell, Dig. (3 ed.) § 3076.

Our constitutional provision that "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured" means that just compensation for property taken for public use is addressed to every sort of interest the citizen may possess. See, Seabloom v. Krier, 219 Minn. 362, 18 N. W. (2d) 88; United States v. General Motors Corp. 323 U. S. 373, 65 S. Ct. 357, 89 L. ed. 311.

■ In State ex rel. Gotzian v. District Court, 77 Minn. 248, 79 N. W. 971, this court had occasion to consider rights which became vested in the city of St. Paul by virtue of proceedings in condemnation. In that case the plaintiff in order to avoid an assessment on an alley argued that the city lacked power to condemn land which the city itself then owned in fee and that therefore the city had no authority to award damages and to assess benefits upon other land for the payment of damages awarded to the city for the actual taking of city property. This court, in upholding the validity of the condemnation proceedings, used the following language (77 Minn. 251, 79 N. W. 972):

"* * * The object of the proceedings in question was to change the absolute title of the city to the part of the lot taken for the alley to one *in trust* for a special public use, which use specially benefited the lot owners abutting on the alley. Or, in other words, the proceedings were a taking of the property of the city, which it held as proprietor, and in which all the taxpayers of the city were

directly interested, to devote it to a limited public use, for the special benefit of private landowners." (Italics supplied.)

The initiation of condemnation proceedings in the instant case under L. 1915, c. 128, came about through a 50-percent vote of the property owners in the restricted residence area with the approval of the members of the city council, as by statute provided. In Restricted Residence District v. Scott, 151 Minn. 115, 186 N. W. 292, wherein the validity of the restricted area in question was established, this court found that the 1915 law intended the costs and expenses of the proceeding to be included in the amount which the assessment for benefits was to defray, which meant that in the end all costs and expenses of the proceedings in condemnation affecting this restricted use area were defrayed out of assessments against the properties within the district. It also found that the law combines the award of damages, for the taking of property under the right of eminent domain, with the assessment of benefits, a taxation matter.[3]

From the foregoing, we must conclude that the owners of lots in this restricted residence district acquired property rights accruing out of condemnation proceedings and that such rights attach themselves to the ownership of the lots in the district so established. While the rights acquired by the proceedings when completed vested absolutely in the city under the provisions of the 1915 law, they are nevertheless held *in trust,* for a special purpose. With a statutory right to sue to protect the use restriction given to every lot owner by the 1915 act as well as the city, it would be but an idle statement, devoid of any purpose, if each owner by reason of such use restrictions, acquiring the property with notice thereof, were not a beneficiary of a trust in the city. There was in the instant case full, complete, and lawful condemnation proceedings. When the required

[3]L. 1915, c. 128, § 4, provides in part as follows:

"* * * The county auditor shall include the same in the next general tax list for the collection of state, county and city taxes, against the several tracts or parcels of land, and said assessments shall be collected with and as a part of, and shall be subject to the same penalties, costs and interest, as the general taxes."

proceedings were met and the awards paid, the lands were deemed to be taken and appropriated for the purpose of the 1915 act. The restrictions were then effectually imposed and it became unlawful to erect, construct, or use in this restricted residence district a threeplex or a fourplex dwelling.

Section 5 of the same act provides that the council shall have power to enact ordinances for the enforcement of the rights which shall be acquired. Such ordinances *were not* for the purpose of acquiring rights (restrictions) but for the purpose of *enforcing* such restrictions. See, State ex rel. Madsen v. Houghton, 182 Minn. 77, 233 N. W. 831; Strauss v. Ginzberg, 218 Minn. 57, 15 N. W. (2d) 130, 155 A. L. R. 1000; State ex rel. Sheffield v. City of Minneapolis, 235 Minn. 174, 50 N. W. (2d) 296.

■ The authorities generally hold that a valid restriction upon the use of real property which in no way threatens or endangers the safety, health, comfort, or general welfare of the community is neither nullified nor superseded by the adoption or enactment of a zoning ordinance. 26 C. J. S., Deeds, § 171c.

A use restriction or covenant restricting the erection of any building except for residential purposes of a prescribed type applies to the use as well as to the character of the building. 26 C. J. S., Deeds, § 164a.

Defendants make the claim that plaintiff's contention must be rejected because to rule otherwise would interfere with the free and proper exercise of governmental functions. The authorities are numerous outside of Minnesota which have held that landowners benefited by a negative easement, an equitable easement, or a reciprocal negative easement, as they are variously designated, are entitled to compensation if there was a taking for public use in violation of the restrictive agreement. Johnstone v. Detroit, G. H. & M. Ry. Co. 245 Mich. 65, 222 N. W. 325, 67 A. L. R. 373; Town of Stamford v. Vuono, 108 Conn. 359, 143 A. 245. The fallacy in defendants' contention was pointed out in Town of Stamford v. Vuono, *supra,* where the Connecticut court made it clear that such restrictions do not interfere with the exercise of any governmental function since such restrictions do not prevent the government from using property

for public purposes as required but merely require that the government make compensation for the same.

Defendants rely on the amendment contained in L. 1943, c. 246, amending § 1 of the 1915 act. Neither the plaintiff, the defendant Jansen, the city, nor any other property owner in this restricted residence area is without a remedy. The statutes grant the express right to get a release from the restriction through condemnation proceedings provided in M. S. A. 462.12. No part of L. 1915, c. 128, or any amendments thereto, have been superseded or repealed since the amendment by L. 1923, c. 133. The prescribing of the specific method of releasing lots from the restrictions imposed, permits the inference that under this specific law no other method was contemplated. As said by the trial court in its memorandum, "It is noteworthy that the proceedings to release a lot from the restrictions must be brought by the city, and must be condemnation proceedings awarding damages and assessing benefits to the property affected." How can this provision, together with the other express statutory provisions, be reconciled with the claim that property owners who may be affected by releasing some part of the district from the restrictions have no rights to protect or that no rights are taken from them by the release of some of the property from its restricted status? The effect of the procedure taken under the amendment, L. 1943, c. 246, in the instant case is neither the exercise of the police power under the zoning laws nor a compliance with condemnation proceedings under M. S. A. 462.12. Its effect is, as found by the trial court, to empower a city council to authorize remodeling of the restricted residence district without resort to the power of eminent domain through condemnation proceedings or to the police power through zoning within the restricted residence district. In Metzenbaum, The Law of Zoning, p. 282, the author says:

"It is the generally recognized rule—now supported by court adjudication as well—that restrictions written into a deed or otherwise controlling an 'allotment' or privately restricted area, are not abrogated or displaced by the restrictions contained in a zoning

ordinance, if the provision in the ordinance is of less restrictive nature than the deed restrictions."

See, also, Smith, Zoning Law and Practice, § 3. Zoning ordinances, if less stringent, do not diminish the legal effect of private restrictions. Strauss v. Ginzberg, *supra*.

■ It seems to us that the situation created in the restricted use area here under condemnation proceedings is similar to the situation where a common grantor opens up a tract of land to be sold in lots and blocks and, before any lots are sold, inaugurates a general plan for such entire subdivision intending thereby to increase the value of each lot and then sells each lot subject to such plan of improvement. As a result there is thereby created and annexed to the entire tract restrictive covenants as to residential type of buildings in which the several purchasers thereafter have an interest and between whom there exists mutuality of covenant and consideration. Authorities hold that such restrictions run with the land and constitute negative equitable easements. No one has ever questioned that these restrictive rights constitute property rights growing out of the mutuality of covenant and consideration. Conditions change from time to time and therefore no hard-and-fast rule can be laid down as to when change in condition will defeat the purpose of the restrictions. It is generally held that the changes must be of such impact as practically to destroy the essential objects and purposes of the restrictive use applied under the original plan. Bachman v. Colpaert Realty Corp. 101 Ind. App. 306, 194 N. E. 783; Wiegman v. Kusel, 270 Ill. 520, 110 N. E. 884; Abbott v. Steigman, 263 Mass. 585, 161 N. E. 596; Storey v. Brush, 256 Mass. 101, 152 N. E. 225; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 545; Schwartz v. Holycross, 83 Ind. App. 658, 149 N. E. 699.

■ We hold that the plaintiff is entitled to the enjoyment of a property right of which he cannot be divested by legislation of the character in question and acted upon here. Who suggested converting the property at 669 Summit avenue into a fourplex property? The evidence in this case does not disclose a public request. What

justification is there for the exercise of the police power to assist a single individual's venture for profit? Courts of final authority have said more than once that Mammon makes no appeal to equity. Police power is not being exercised within its proper sphere when it seeks to nullify lawful agreements or restrictions which in no way operate to the detriment of the public welfare. Kettle River R. Co. v. Eastern Ry. Co. 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; Ludgate v. Somerville, 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837; Szilvasy v. Saviers, 70 Ohio App. 34, 44 N. E. (2d) 732; Gordon v. Caldwell, 235 Ill. App. 170; Riverbank Improvement Co. v. Chadwick, 228 Mass. 242, 117 N. E. 244, L. R. A. 1918B, 55; Vorenberg v. Bunnell, 257 Mass. 399, 153 N. E. 884, 48 A. L. R. 1431; Jenney v. Hynes, 282 Mass. 182, 184 N. E. 444.

No further authorities need be cited to establish that under the circumstances before us any act which deprives a citizen of his property rights cannot be sustained under the police power unless the public health, morals, comfort, or welfare demands that such power be exercised or that such laws or ordinances be enacted.

■ An equitable remedy by and for the benefit of an owner in this restricted residence district is available to the plaintiff. Injunctive relief is proper under the circumstances. Newcomb v. Teske, 225 Minn. 223, 30 N. W. (2d) 354.

The trial court exercised its discretion in assuming equitable jurisdiction of this cause, and we see no reason to interfere therewith.

The decree of the court below is affirmed.

Affirmed.